COMMONWEALTH *vs.* CARMEN SANTINO ZEZIMA.

Suffolk.    March 5, 1974. — May 3, 1974.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Evidence*, Communication to clergyman.    *Error*, Whether error harmful.    *Words*, "Communication."

The word "communication" in the prohibition in G. L. c. 233, § 20A, of testimony by a clergyman "as to any communication made to him" by certain persons is not limited to conversations and includes other acts by which ideas may be transmitted from one person to another. [240-241]

At a trial for murder by shooting, where the defendant testified that he had neither owned nor possessed a gun during the year before the crime, and later a clergyman testified that about two months before the crime he was in the defendant's company, the judge should then have granted the defendant's request for a voir dire as to whether the clergyman's expected testimony that the defendant had shown him a gun was a "communication" to the clergyman which was prohibited by G. L. c. 233, § 20A [241-242]; possible error in the subsequent admission of the clergyman's testimony that the defendant had shown him a gun was not so prejudicial as to require reversal of the defendant's conviction, since such testimony dealt with a collateral issue and was only cumulative of other testimony [242].

THREE INDICTMENTS found and returned in the Superior Court on March 14, 1973.

The cases were tried before *Connolly*, J.

*William P. Homans, Jr.*, for the defendant.

*Elizabeth C. Casey*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.    The defendant was convicted of murder in the second degree on an indictment charging him with murder in the first degree of one Chester Miller. The defendant was also convicted of assault with intent to murder another individual and of unlawfully carrying a firearm. In this appeal under G. L. c. 278, § § 33A-33G, the

defendant argues assignments of error relating to his claim that the admission of testimony of a clergyman violated the provisions of G. L. c. 233, § 20A, which grants a testimonial privilege as to certain communications made to a clergyman.[1]

In order to set forth the circumstances under which the clergyman's testimony was admitted, it is not necessary to describe the trial in detail. It was not disputed that Miller died and another man was wounded as a result of being shot by a gun held by the defendant. There was conflicting testimony as to the circumstances under which the gun was discharged.

The defendant testified on direct examination that he had never owned a weapon or carried one in his life. On cross-examination he testified that for at least a year prior to February 15, 1973 (the date of the shootings) he neither owned nor possessed a gun. In the course of his testimony the defendant said that it was Miller and not he who had possession of a gun from time to time.

After the defendant had rested, the Commonwealth offered testimony from the Rev. Dennis Orson, pastor of a Lutheran Church in East Boston. He testified that he knew the defendant and was in his company around Christmas of 1972. At this point defence counsel requested a voir dire "with respect to the provisions of ... [G. L. c. 233, § 20 A]." A bench conference was then held. The prosecutor indicated that he did not "expect to elicit any communication, any speech from this minister. I expect to ask him what he saw with regard to the defendant. Did he see a gun

---

[1] General Laws c. 233, § 20A, inserted by St. 1962, c. 372, reads as follows: "A priest, rabbi or ordained or licensed minister of any church or an accredited Christian Science practitioner shall not, without the consent of the person making the confession, be allowed to disclose a confession made to him in his professional character, in the course of discipline enjoined by the rules or practice of the religious body to which he belongs; nor shall a priest, rabbi or ordained or licensed minister of any church or an accredited Christian Science practitioner testify as to any communication made to him by any person in seeking religious or spiritual advice or comfort, or as to his advice given thereon in character, without the consent of such person."

in his possession? And I don't believe that is covered by this particular statute." Defence counsel pressed his request for a voir dire, arguing that the showing of a gun could be a communication whose disclosure was barred under G. L. c. 233, § 20A, in the absence of the defendant's consent. In the course of further colloquy, the Commonwealth stipulated that "the purpose of . . . [Mr. Orson and the defendant] being together was in accord with the statute."

The judge denied the request for a voir dire, and the defendant excepted to the ruling. The judge instructed Mr. Orson not to relate "any conversation or other communications that you might have had with the defendant" and advised him that his testimony would be limited by the prosecutor's questions to what he observed. It seems reasonably clear that the judge concluded that the act of displaying a gun would not be a "communication" within the meaning of that word in § 20A, even if performed in the course of a conversation protected under the statute.

Mr. Orson then testified, over the defendant's further objection and exception, that around Christmas time in 1972 when he was traveling in his car with the defendant, the defendant took a handgun from his clothing and placed it in the glove compartment of the car, and that at the end of the trip the defendant removed the gun from the glove compartment and took it with him.

In the context of this case the only portion of § 20A which is arguably applicable is that which provides that no minister shall "testify as to any communcation made to him by any person in seeking religious or spiritual advice or comfort . . . without the consent of such person." The Commonwealth's stipulation that the purpose of Mr. Orson and the defendant's being together was "in accord with the statute" amounts to a concession that the defendant was "seeking religious or spiritual advice or comfort" in the course of the automobile trip. Thus under § 20A all conversation between the two as an incident to a quest for religious or spiritual advice or comfort was inadmissible in the absence of the defendant's consent. If the word "communication" in § 20A includes the act of the defendant in

displaying the gun, testimony as to that fact was also inadmissible under § 20A without the defendant's consent, provided the display took place as part of a quest for religious or spiritual advice or comfort.[2]

We believe that the word "communication" in § 20A is not limited to conversation and includes other acts by which ideas may be transmitted from one person to another. Such is the general rule with respect to the scope of the attorney-client privilege (see Wigmore, Evidence [McNaughton rev.] § 2306 [1961]; McCormick, Evidence [2d ed.] § 89 [1972]; *Klefbeck* v. *Dous*, 302 Mass. 383, 389 [1939] [letters]; *Vigoda* v. *Barton*, 348 Mass. 478, 485 [1965] [letters]; *City & County of San Francisco* v. *Superior Court of the City & County of San Francisco*, 37 Cal. 2d 227, 235 [1951]; *State* v. *Douglass*, 20 W. Va. 770 780-781 [1882]), and we see no reason for construing more narrowly the privilege granted in § 20A. We think it significant that G. L. c. 233, § 20, uses the word "conversations" in dealing with the testimonial disqualification of a spouse as to "private conversations." Such "conversations" have been interpreted as not including written communications. *Commonwealth* v. *Caponi*, 155 Mass. 534, 537 (1892). The adoption by the Legislature of the word "communication" (and not "conversation") in the very next section of G. L. c. 233 manifests an intention to include more than conversations in the privilege concerning testimony of a clergyman.[3]

Because the act of showing a gun might constitute a privileged communication under § 20A and because we do not know whether the defendant's action with respect to

---

[2] Because of the Commonwealth's concession and because there was no evidence concerning the specific circumstances under which the gun was shown to Mr. Orson, we have no occasion to consider whether a privileged situation existed. For cases concerned with the existence of privileged circumstances see Wigmore, Evidence (McNaughton rev.) § 2395, fn. 2 (1961).

[3] We note that in the statute concerning the privilege of a patient to bar the disclosure of any "communication" to a psychotherapist (G. L. c. 233, § 20B, inserted by St. 1968, c. 418), the word "communication" is defined to include "actions" and "occurrences" as well as "conversations" and "correspondence." This statute was enacted after St. 1962, c. 372, inserting § 20A, and thus should not be construed as affecting the meaning of the word "communication" in § 20A.

the gun in the presence of Mr. Orson was in the course of "seeking religious or spiritual advice or comfort," the defendant's request for a voir dire should have been granted. Thus Mr. Orson's testimony concerning the gun may have been admitted in violation of § 20A.[4]

Although on this record it is possible that Mr. Orson's testimony that the defendant displayed a gun to him was not admissible under § 20A, we do not regard the admission of that testimony as prejudicial error justifying reversal of the defendant's convictions. Proof that the defendant had had a gun in his possession two months before the shootings was not essential to the Commonwealth's case. Thus the rebuttal evidence offered through Mr. Orson dealt with a collateral issue and was presumably offered solely to impeach the defendant's testimony that he had not possessed a gun during the year before the crime.[5] Moreover, the Commonwealth presented other witnesses, including two rebuttal witnesses, who testified that they had seen the defendant in possession of a gun within a year before the shootings. Mr. Orson's testimony was therefore only cumulative and its admission not prejudicial. *Commonwealth* v. *Gliniecki*, 339 Mass. 464, 469 (1959). In these circumstances there is no reasonable basis for setting aside the convictions because of any error in the admission of the clergyman's testimony. Nor is there any basis for us to order

[4] A nonprivileged communication from a person to a clergyman could, of course, be made at about the same time as other communications which are granted statutory privilege. See *State* v. *Brown*, 95 Iowa 381, 385 (1895). Obviously the clergyman's statements concerning the circumstances surrounding the communication must be given considerable weight. His view is not conclusive, however, because it is the judge who must make the determination whether a communication occurred in circumstances described in § 20A. Although it may not always be easy to pass on this factual question without trespassing into the possibly privileged communication itself, in circumstances such as exist in this case the attempt should nevertheless be made.

[5] Extrinsic evidence to rebut a witness on a collateral matter is not admissible as of right (see *Gorham* v. *Moor*, 197 Mass. 522, 525 [1908]; *Commonwealth* v. *Connolly*, 308 Mass. 481, 495 [1941]) although, in the judge's discretion, it is not error to admit such testimony. See *Commonwealth* v. *Hersey*, 324 Mass. 196, 202 (1949). Here, however, the defendant raised no objection to the admissibility of the impeaching evidence on this ground, perhaps because the defendant himself raised the subject first by testifying on direct examination that he had never owned or carried a gun.

a new trial or to direct the entry of a lesser verdict of guilt upon our consideration of the whole case under G. L. c. 278, § 33E.

*Judgments affirmed.*