Arthur E. Blyn, J.
Is privilege a right?
This question arose in this matrimonial proceeding in which the plaintiff seeks the dissolution of the marriage and both *277 the plaintiff and defendant wish custody of the three infant issue of the marriage.
A number of years prior to the commencement of this proceeding the parties, who had been having marital problems, sought the help, advice and guidance of the Jewish Family Service. Both were interviewed by staff personnel of that agency, including social workers and at least one psychiatrist. It is clear that both parties were interviewed together on a number of occasions. It is not clear, from the record, whether either or both were ever interviewed without the other being present. At that time there was no intention to dissolve the marriage, nor was there any question of a dispute as to custody of the children. As a matter of fact the parties had sought the help of the Jewish Family Service in an attempt to preserve the marriage.
During the trial the attorney for the defendant served a subpoena duces tecum on the Jewish Family Service calling upon it to produce its records and reports covering the consultations, examination, interviews, etc., relating to the parties. He also made an offer of proof to the effect that he wished to produce as a witness the psychiatrist on the staff of that agency who had interviewed the parties.
The attorney for the plaintiff objected to the production and admission into evidence of the records and reports of the agency on the grounds that they were not business records as defined in CPLR 4518 and that in any event they were privileged under the relevant section of the CPLR and that the offer of proof to produce the psychiatrist should be denied on the grounds of privilege. The court reserved decision at that time.
The Jewish Family Service thereafter informally sought permission to appear as amicus curiae and was permitted to submit a memorandum of law opposing the production of its records and reports on the grounds of the privilege granted in CPLR 4508.
The court is of the opinion that the totality of the Jewish Family Service function falls within the ambit of protection afforded by various sections of the CPLR. CPLR 4508 for certified social worker-client relationships; CPLR 4507 for registered psychologist-client relationships; and CPLR 4504 for physician (psychiatrist)-patient relationships; and all of the other staff personnel of that agency by virtue of their relation *278 ship to the protected communications. (People v Decina, 2 NY2d 133, 142, 143.)
Persons who voluntarily seek the aid of such an agency in connection with inter-personal problems, whether the family unit or other, must, if such aid is to be successful, deal with the staff of such agency with the utmost candor, revealing and laying bare all of their secret feelings, resentments, hostilities, fantasies, desires, etc. To embark on this most difficult task of stark self-revelation the parties must have absolute confidence that total privacy (read privilege) protects such baring of their souls.
Some Judges have dealt with privilege in a manner not calculated to encourage this essential element of confidence in the total privacy (read privilege) of such disclosures.
They have placed great reliance on Wigmore’s four fundamental conditions claimed to be necessary to establish the privilege against disclosure between persons standing in given relationships. (8 Wigmore, Evidence [McNaughton rev], § 2285, p 527.)
They read as follows:
"(1) The communication must originate in a conñdence that they will not be disclosed.
"(2) This element of conñdentiality must be essential to the full and satisfactory maintenance of the relation between the parties.
"(3) The relation must be one which in the opinion of the community ought to be sedulously fostered.
"(4) The injury that would inure to the relation by the disclosure of the communications must be greater than the beneñt thereby gained for the correct disposal of litigation.”
These Judges have interpreted the fourth condition in such a way as to negate the privilege of CPLR 4508. For example, in the case of Matter of Humphrey v Norden (79 Misc 2d 192), involving a paternity proceeding the court found that no privilege existed as to testimony by a social worker of the Jewish Family Service who interviewed both the petitioner and the alleged putative father (respondent) during the pregnancy of the petitioner.
The respondent maintained that any statements made by him while both he and the petitioner were meeting with the social worker were privileged under CPLR 4508. The court in *279 that case stated that the respondent had failed to meet the fourth condition of Wigmore in the following words: "The disclosure of evidence relevant to a correct determination of paternity is of far greater importance than any injury that might inure to the relationship between the social worker and his clients. * * * (See People ex rel. Chitty v Fitzgerald, 40 Misc 2d 966.)” In passing it should be noted that the court in People ex rel. Chitty (supra) begged the real question posed as to whether privilege can be breached at the discretion of a Judge.
The court in Matter of Humphrey (supra, p 194), perhaps a little uncertain as to the validity of this interpretation based on Wigmore’s fourth condition, then added the following: "The statute [CPLR 4508] is relatively new and there has been relatively little case law on it. However, it has long been held that 'If two or more persons consult an attorney in regard to a matter of common interest to them, nothing that is said by the parties or the attorney is deemed confidential, in an action arising subsequently thereto between the parties or their personal representatives.’ ” (Matter in brackets added.) (Hurlburt v Hurlburt, 128 NY 420 [1891]; Wallace v Wallace, 216 NY 28 [1915]; Lawless v Schoenaker, 147 Misc 626 [1933].) The court in the Matter of Humphrey (supra) then reasoned: "By analogy and on the same theory, where two or more persons consult a social worker in regard to a matter of common interest to them, nothing that is said by the parties or the social worker is deemed confidential in an action arising subsequently thereto between the parties.” So much for the sanctity of this privilege granted by the Legislature in CPLR 4508. More on this point later.
Another Judge in the Matter of Clear (58 Misc 2d 699) resorted to the same fourth condition of Wigmore to find that privilege under CPLR 4508 could be breached by the court, using the same phrase about balancing the conflicting interests as appeared in the Matter of Humphrey (supra). The court in the Matter of Clear (supra, p 702) not satisfied with reliance only on the fourth condition of Wigmore interpreted the second and third conditions of Wigmore to support its conclusion that it could breach the privilege of CPLR 4508. This involved a certain amount of straining to conclude that the mother of the infant in that proceeding was not protected by the privilege because the "primary responsibility and relationship of the authorized agency ran to the child committed *280 to its care by the Department of Social Services and not to the child’s mother.”
Of course the communication to which the privilege was claimed was not between the child and the agency staff but between the mother and the agency staff. That court then launched into the following hyperbole to rationalize its breach of the privilege: "In regard to the second condition there is no evidence as to the essentiality of confidentiality between the social worker and the mother, and no evidence has been submitted as to the character or the extent of the relationship between the social worker and the mother.”
In a footnote the Judge makes the same reference to Hurlburt v Hurlburt (supra), as was made by the Judge in Matter of Humphrey (supra). Again so much for the sanctity of CPLR 4508’s privilege. Again more on this point later.
It is customary for courts to resort to extrajudicial material in many matters involving interpretation of the law. Such sources as law school reviews, law school professors’ writings, Richardson on Evidence and Wigmore on Evidence are examples.
In the matter under discussion here the point has been made that a number of Judges have alluded to the "four fundamental conditions * * * as necessary to the establishment of a privilege against the disclosure of communications”. (8 Wigmore, Evidence [McNaughton rev], p 527.)
This court also on occasion resorts to the extrajudicial material referred to when case law is not relevant to an issue. However unlike case and statutory law the court is not bound by such extrajudicial sources. Judges ought not to accept uncritically the interpretations of law expounded, and yes even espoused, in such source material.
For example, the great emphasis on the four fundamental conditions alluded to earlier. Besides the attorney-client privilege, which existed in the common law before it was given statutory authority, all the other privileges were created by statute. The attorney-client privilege was the subject therefore of much decisional common law before it was enacted into statutory law. There was no such prior common-law interpretation of the other privileges. This immediately sets apart the attorney-client privilege from the other privileges.
Wigmore devoted a substantial number of pages in his work on evidence to the attorney-client privilege as contrasted with *281 the physician-patient, clergyman-penitent, husband and wife and other privileges. It is this court’s belief that Wigmore although including the four fundamental conditions under the topic heading "Confidential Communications in General” was most concerned about and interested in the attorney-client privilege. The basis for this conclusion is established by Wig-more himself. In section 2286 (Wigmore, Evidence, p 532) he makes the following statement: "Statutes. In recent times in the United States, however, legislation has been sought, here and there successfuly, to establish new privileges. Most of these attempts have been made by organized occupational groups who believe that for the protection of their own particular interests a privilege is needed and is justified. In no instance has it been made to appear that the occasional disclosure, in judicial proceedings, of the communication sought to be kept secret would be injurious to the general exercize of the occupation, or that all the conditions exist which justify a general privilege.” Wigmore obviously frowned on the extension of privilege to other occupations or professions. He clearly was only examining the possible self-interests of such groups and appeared to totally ignore the impact on the people who sought the help of such occupations or professions. He seemed to be oblivious to the fact that it was the right to privilege of such persons that was the nub of the matter and not the professional or occupation groups’ right to privilege.
As further indication of Wigmore’s attitude on this issue attention is called to section 2286 (Wigmore, Evidence, pp 536, 537) in which he quotes liberally from a report of the American Bar Association’s Committee on the Improvement of the Law of Evidence in 1937-1938 (23 years prior to the date of the revised edition). Wigmore cites with evident satisfaction and agreement the recommendation by that committee that: "the Legislatures refuse to create any new privileges for secrecy of communications in any occupation, and particularly we recommend against any further recognition of * * * (B) Privilege for information obtained by Social Workers.” Wig-more refers to this as "The sounder attitude, the one reflected by the bench and bar”.
In this light this court believes that undue reliance and weight is given by some Judges to the four fundamental conditions of Wigmore.
The Legislature, when it enacted CPLR 4508 into law, *282 included in its membership a large number of attorneys, and thus would be aware of Wigmore and his four fundamental conditions. Yet when it did so it saw fit to provide only four exceptions to this privilege. Nowhere do we find any reference to the four fundamental conditions. Actually the first three conditions were implicitly incorporated in CPLR 4508 and by the very fact of its enactment the Legislature has eliminated the significance, if any, of the test of the first three conditions. This is so because the Legislature deemed the relationship between social worker and client to be one where communications "originate in a confidence that they will not be disclosed. (First condition.) The Legislature further by such act deemed that the "element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.” (Second condition.) And finally by such act answered the third condition "The relation must be one which in the opinion of the community ought to be sedulously fostered.”
Now if the Legislature meant to give the fourth condition any statutory validity it could and would have done so. There is no mention in CPLR 4508 (which sets forth four exceptions to the privilege attaching) of any discretion to the court which is contained in the fourth condition: "The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation.”
In this regard it is of interest and relevance that a report by the New York Law Revision Commission, Report, Recommendations and Studies ([1949], pp 25, 28-29) dealing with a proposal to give privilege to reporters which was being considered by the Legislature, made the following recommendation to be included in any legislation so providing: "In any case where a reporter claims the privilege conferred by this section, the body * * * seeking the information may apply to the supreme court for an order divesting the reporter of the privilege. * * * The order shall be granted only when the court, after hearing the parties, shall find that disclosure is essential to the protection of the public interest”. Surely if the Legislature had intended to grant such discretion to the courts when it enacted CPLR 4508 and its predecessor, Education Law (§ 7710) it would have included such a provision as an added exception.
Now getting back to the principle relied upon by the courts in Matter of Humphrey (supra) and Matter of Clear (supra), *283 and set forth in Hurlburt v Hurlburt (supra) and Wallace v Wallace (supra), etc. When individuals seek the aid of such family guidance agencies at least one other person is involved. It is rare that social workers or the other staff members of such agencies give advice and guidance based on interviews with only one of such persons. If the courts were to apply the reasoning set forth in the Matter of Humphrey (supra) and Matter of Clear (supra) where two or more persons are involved the privilege would be deemed to be breached and CPLR 4508 would be reduced to a meaningless act of the Legislature. The error in such reasoning arises from making indiscriminate comparisons between the privilege in the attorney-client relationship and that of the social worker-client relationship.
When a court says it is balancing the privilege with some other interest, whether denominated a community interest or anything else, and then goes on to say that the danger to the relationship of the social worker to the client is outweighed by such other interest, it misses the real point. It is not the individual relationship between a client and a social worker that is injured. It is the general relationship between all clients and their social workers that is injured. It is the chilling effect on such a general relationship that is overlooked by courts when they apply the balancing act test.
If parties who are in need of help face the danger that some court will at some later date balance the privilege, which the clients believe they have every right to rely on, with some other so-called interest, what happens to the necessary "baring of the souls”, the necessary "self-revelation”, the necessary honesty required to provide the basis for such aid?
Who would wish to be subjected to such self-revelation faced with the possibility that at some later time a court will do a balancing act and declare that the privilege relied upon was a myth?
When the courts begin to destroy this privilege on the grounds, amongst others, that when custody or paternity, or some other so-called community interest is involved, then privilege is not the right it should be but a feeble pretense of privilege at the mercy of some balancing act by some court.
Privilege granted by the Legislature was not meant to be a myth. It was meant to cure the evil which had resulted from social workers either voluntarily or by court direction being forced to disclose communications given to them of the most *284 intimate nature by people desperately in need of help. People were, and are, told that in order to be helped they must reveal the innermost parts of their emotional being — their most dreadful fantasies, their fears, their angers and desires. How can such persons have faith in this process if they become aware that some court can subsequently find that the confidence in which such feelings were revealed can be betrayed? This court takes the position that any communication which is privileged when made remains privileged forever unless the privilege is waived by the client.
The court therefore sustained the objection of the plaintiff to the admission into evidence of the records and reports of the Jewish Family Service; and to any testimony sought to be elicited as to the conversations and communications between the parties, while at the Jewish Family Service, sought to be given by the defendant; and to any testimony sought to be elicited from a psychiatrist on the staff of the Jewish Family Service.