## COMMONWEALTH *vs.* MARK COLLETT.

Suffolk.  May 4, 1982. — September 20, 1982.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence,* Privileged communication.  *Social Worker.  Statute,* Construction.

A social worker's privilege under G. L. c. 112, § 135, includes communications from persons consulting the social worker in his professional capacity, regardless whether such persons are clients of the social worker.  [427-428] LYNCH, J., dissenting.

A social worker can assert the privilege under G. L. c. 112, § 135, on behalf of persons who are not parties to the action in which the social worker's testimony is sought.  [428-431]

The exception to a social worker's privilege found in G. L. c. 112, § 135 (*b*), does not extend to all information which might be relevant in the prosecution of a person for a crime, but requires a social worker to disclose only communications which relate directly to the commission or immediate circumstances of a crime or harmful act.  [431-436] LYNCH, J., dissenting on the ground that the record does not provide a basis for a conclusion respecting the extent of the exception  [441-443].

Discussion of procedure to be followed by a judge in determining whether communications made to a social worker are privileged under G. L. c. 112, § 135.  [436-439]

INDICTMENT found and returned in the Superior Court Department on July 21, 1981.

Questions of law were reported to the Appeals Court by *Brogna,* J.  The Supreme Judicial Court granted a request for direct review.

*Arnold R. Rosenfeld* for Mark Collett.

*Anne Goldstein* for Betsy John.

*Linda M. Poulos,* Legal Assistant to the District Attorney (*Michael J. Traft,* Assistant District Attorney, with her) for the Commonwealth.

*Barry L. Mintzer,* for National Association of Social Workers, Massachusetts Chapter, amicus curiae, submitted a brief.

NOLAN, J. The defendant is charged with murder in the second degree. At a pretrial hearing, the Commonwealth orally moved to compel a licensed certified social worker to disclose communications made to her in her professional capacity by the defendant and other persons. The social worker was represented by counsel. She asserted a social worker's privilege pursuant to G. L. c. 112, § 135. The judge ordered the social worker to disclose "all of the alleged communications" to the judge and to the prosecutor at a pretrial in camera hearing. The order also provided that following this disclosure, the prosecutor was to "inform the judge as to the necessity for the disclosure of any or all of the communications in the case to be tried; that thereafter the judge shall rule as to which of the communications he shall order the social worker to disclose at the trial." The judge subsequently amended his order to permit the defense attorney to be present at the in camera hearing. Acting on the social worker's motion, the judge reserved his order and reported two questions to the Appeals Court pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), and G. L. c. 231, § 111. We granted the social worker's application for direct appellate review.

The issues reported are:

"1. What is the proper scope of the licensed certified social worker's privilege under G. L. c. 112, sec. 135 in a second degree murder trial when, in her claimed professional capacity and as an employee of a private hospital treating the victim she had interviewed and received pre-indictment information from the defendant, Mark Collett, including but not limited to statements revealing the commission of a crime or a harmful act?

"2. Does a non-party who gave information to the social worker have any enforceable right to prohibit disclosure under G. L. c. 112, sec. 135?"

The social worker's brief additionally raises the issue of whether the in camera hearing violated G. L. c. 112, § 135.

The facts provided in the parties' briefs follow. Betsy John, the social worker involved in this case, is employed by

the Massachusetts General Hospital in Boston. The victim, a seven month old child, was brought to the hospital on July 9, 1981. She died one week later from her injuries. Shortly after the child was admitted to the hospital, John was assigned to treat the victim's family. She filed a child abuse report as required by G. L. c. 119, § 51A. She interviewed the victim's mother and several other relatives as well as the defendant, who was the mother's boyfriend. When the child died, the social worker immediately notified the district attorney and the medical examiner as required by G. L. c. 119, § 51A. Later in July, Ms. John testified before the Grand Jury for Suffolk County. She testified that during an interview with the defendant, he admitted to her that he hit the victim on the night she was hospitalized and had also hit her in the past. Ms. John refused to disclose any other information, claiming a privilege under G. L. c. 112, § 135. At the pretrial hearing, the Commonwealth orally moved that Ms. John be required to disclose various communications made to her by the defendant, members of the victim's family and professionals working for other agencies. The judge's order states that the alleged communications sought by the Commonwealth "concern the child's appearance and behavior prior to her hospitalization and the feelings, observations, suspicions and hopes [the speakers held] about the child and one another." The Commonwealth also seeks certain statements made by the defendant allegedly denying any wrongdoing.

In 1977, as part of a larger statutory scheme for the licensing and regulation of social workers, the Legislature enacted St. 1977, c. 818, § 2, inserted as G. L. c. 112, § 135. The entire statute, as amended by St. 1981, c. 91, § 1, is set out below.[1] General Laws c. 112, § 135, prohibits disclo-

---

[1] General Laws c. 112, § 135, provides: "No social worker in any licensed category, including those in private practice, may disclose any information he may have acquired from persons consulting him in his professional capacity except:

"(a) with the written consent of the person or, in the case of death or disability of his own personal representative, other person authorized to

sure by a licensed social worker of information acquired from persons consulting him in his professional capacity with five exceptions. This case is concerned with the exception embodied in subsection (b) which states that a social worker "shall not be required to treat as confidential a communication that reveals the contemplation or commission of a crime or a harmful act." The parties[2] disagree about the scope and meaning of this exception. They disagree as well concerning who is the proper party to determine whether the exception applies and how the determination should be made. Finally, they hold differing viewpoints on whose confidences the statute is intended to protect.

1. *Statutory purpose.* The privilege established by c. 112, § 135, is one of several provided by Massachusetts law.[3] The enactment is a legislative recognition that the

---

sue, or the beneficiary of an insurance policy on his life, health, or physical condition;

"(b) that a licensed certified social worker, including those engaged in independent clinical practice, licensed social worker, or licensed social work associate shall not be required to treat as confidential a communication that reveals the contemplation or commission of a crime or a harmful act;

"(c) when the person waives the privilege by bringing charges against the licensed certified social worker, including those engaged in independent clinical practice, the licensed social worker, or the licensed social work associate;

"(d) to initiate a proceeding under subsection C of section twenty-three of chapter one hundred and nineteen or section twenty-four of chapter one hundred and nineteen or section three of chapter two hundred and ten and give testimony in connection therewith;

"(e) in any other child custody case in which, upon a hearing in chambers, the judge, in the exercise of his discretion, determines that the social worker has evidence bearing significantly on the person's ability to provide suitable custody, and that it is more important to the welfare of the child that the information be disclosed than that the relationship between the person and social worker be protected."

[2] We have before us briefs from the Commonwealth, the defendant, the social worker and an amicus brief from the National Association of Social Workers, Massachusetts chapter.

[3] Other statutory privileges are: psychotherapist-patient, G. L. c. 233, § 20B; priest-penitent, G. L. c. 233, § 20A; physician-patient, G. L. c. 233, § 23B; and husband-wife, G. L. c. 233, § 20, cl. Second.

confidentiality of a person's communications to a social worker is a necessity for successful social work intervention. See Note, The Social Worker-Client Relationship and Privileged Communications, Wash. U. L. Q. 362 (1965). As a New York court has said: "Whether the protected relationship involves physician, psychologist or certified social worker, all share the common purpose of encouraging the patient or client fully to disclose the nature and details of his illness or his emotions without fear of later revelation by one in whom he placed his trust and confidence." *Perry* v. *Fiumano,* 61 A.D. 2d 512, 516 (N.Y. 1978). Disclosures of confidential information can harm more than the individual social worker-client relationship involved. If it becomes known that confidences are violated, other people may be reluctant to use social work services, and may be unable to use them to maximum benefit. The purpose of enacting a social worker-client privilege is to prevent the chilling effect which routine disclosures may have in preventing those in need of help from seeking that help. See *Yaron* v. *Yaron,* 83 Misc. 2d 276, 283-284 (N.Y. Sup. Ct. 1975); *Usen* v. *Usen,* 359 Mass. 453, 457 (1971). See generally, Annot., Communications to Social Worker as Privileged, 50 A.L.R. 3d 563 (1973). The Legislature has determined that while the preservation of the confidential relationship is an important objective, under certain circumstances, this goal must give way in favor of other societal interests. Therefore, the Legislature has carved out five exceptions to the statutory privilege.

2. *Privilege of nonparty.* We now consider to whom the privilege created by the statute extends. The statute provides that it protects information "acquired from persons consulting [the social worker] in his professional capacity." The Commonwealth argues that the statute only applies when a professional relationship exists between a social worker and a client. The Commonwealth further argues that John's only client was the child who was admitted to the hospital and that the defendant and other persons with whom John spoke during the course of her assignment were

not her clients and therefore cannot assert a claim of privilege. The social worker argues that the privilege applies to all those persons who consulted her in her professional capacity, even those who are not parties to this action, and she further contends that she is duty-bound to raise the privilege issue on behalf of those persons.

We do not have information before us concerning John's specific duties and the circumstances surrounding her assignment to the victim's case. However, common sense tells us that in a case of suspected child abuse, especially one involving a child of seven months, part of the social worker's professional duties would necessarily involve consulting with members of the victim's family and others closely connected to the victim's home situation. It is clear that the social worker spoke with the defendant and the victim's family members in the course of fulfilling her professional responsibilities. The defendant appears to be a person who consulted the social worker in her professional capacity and is therefore entitled to claim the privilege under the statute. The phrase, "persons consulting him" would seem, at first blush, to require the client to initiate the contact or engagement of the licensed social worker. However, at least in the sphere of public welfare, the social worker generally makes the initial foray and this is especially true in cases of child abuse. Therefore, for the statute to have much meaning and for it to do its job, this language should include those relationships with clients which have been first established by the social worker; otherwise, the statute would suffer from a useless restrictiveness. Some other States which have enacted statutes on social workers' privilege have restricted their scope. For example, the New York statute, N.Y. Civ. Prac. Law § 4508 (Consol. 1978), protects communications made to a social worker by "his *client.*" See *People* v. *Lipsky*, 102 Misc. 2d 19, 23-24 (N.Y. Monroe County Ct. 1979). The South Dakota statute, S.D. Codified Laws Ann. § 36-26-30 (1977), protects communications "necessary to enable [the social worker] to render services in his professional capacity." See *State* v. *Martin*,        S.D.

(274 N.W.2d 893 [S.D.]), cert. denied, 444 U.S. 883 (1979). The client qualification was contained in several earlier versions of the Massachusetts statute which were not passed by the Legislature. 1971 House Doc. No. 4877. 1972 House Doc. No. 1997. A similar restriction was not contained in the enacted version. Under its terms, it is not necessary to determine whether it was the victim, the victim's family or both who were technically the social worker's clients. It is only necessary that the communications have been acquired from persons consulting the social worker in her professional capacity. In the case before us, the communications received by John which she acquired in her professional capacity from the defendant and the victim's family members come within the terms of the statute. The privilege embodied in the statute is not expressly limited to those who are parties to a lawsuit. Under the terms of the statute, a social worker is prohibited from disclosing information acquired from one consulting her in her professional capacity unless one of the five exceptions applies. Therefore, we think it clear that the social worker can and should assert the privilege on behalf of those who are not parties to the action. Any other interpretation would lead to a questionable result. It makes little sense to protect the confidences of a person who is involved in a lawsuit while providing that the confidences of someone who is not a party should be freely disclosed.

Apparently, some of the circumstances which the Commonwealth seeks have been acquired by the social worker from other professionals. We do not have any information before us concerning the nature of these communications or the circumstances of their occurrence. It is clear, however, that the statute is designed to protect confidences which a social worker acquired from a person consulting him in his professional capacity and is not designed to protect communications between social workers unless they in turn involve confidences obtained from a person consulting him. We leave it to the trial judge to determine whether the communications the social worker received from other profes-

sionals are privileged because they involve confidences obtained from the persons consulting them.

3. *Scope of exception.* We now turn to an examination of the scope of the exception embodied in subsection (*b*). The pertinent language of subsection (*b*) provides that a social worker "shall not be required to treat as confidential a communication that reveals the contemplation or commission of a crime or a harmful act." We first discuss a preliminary issue. At the hearing below and in the brief before us, the social worker argued that this exception allowed but did not require a social worker to testify to communications revealing the commission of a crime. She contended that a social worker could voluntarily decide to testify in this situation but that the decision was discretionary with the social worker. At oral argument, the social worker abandoned this argument and conceded that the statute requires disclosure of such a communication. We agree that the statutory exception does not vest discretion in the social worker to determine whether the communication should be disclosed. As a New York court said in construing a very similar statutory provision: "Such a construction of the statute is unwarranted and is rejected . . . . [I]t must be held that the meaning of the statute is that communications by a client which reveal the contemplation of a crime or harmful act are not privileged and are subject to compulsory disclosure." *Community Serv. Soc'y* v. *Welfare Inspector Gen.*, 91 Misc. 2d 383, 387 (Sup. Ct. 1977), aff'd 65 A.D.2d 734 (N.Y. 1978).

Exception (*b*), then, provides that when a social worker has received a communication that "reveals the contemplation or commission of a crime or a harmful act," the communication is not privileged. The social worker has testified before the grand jury concerning statements made by the defendant which fall into this category and is prepared to do so at trial. The record before us does not disclose the contents of the statements, but according to both the Commonwealth's and the social worker's brief the social worker testified that, during her interview with the

defendant, he admitted that he hit the victim on the night she went to the hospital and also had hit her in the past. It is clear that these statements reveal the commission of a crime or harmful act and are not privileged. The Commonwealth at the pretrial conference moved that the social worker be required to disclose other communications made to her by the defendant and others concerning the child's appearance and behavior prior to her hospitalization and the feelings, observations, suspicions and hopes that the defendant and the others interviewed held about the child and one another. The Commonwealth argues that these communications reveal the commission of a crime and therefore are not privileged. The Commonwealth contends that exception (b) not only encompasses admissions of guilt but also extends to communications which are evidence of consciousness of guilt, such as denials or false statements, and in addition any information that has any bearing upon criminal activity. John contends that the exception must be construed much more narrowly and that the Commonwealth's interpretation of the exception would effectively nullify the statute.

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). The intended scope of the phrase "communication that reveals the contemplation or commission of a crime or a harmful act" is not readily ascertainable from the language used. While it is clear that admissions of a crime or harmful act are intended to be covered by this phrase, it is not clear whether the additional communica-

tions which the Commonwealth seeks are intended to fall within the statutory exception.[4]

When the phraseology of a statute is ambiguous, the court may look to the various steps in its enactment to resolve the ambiguity. *Worcester* v. *Quinn*, 304 Mass. 276, 281 (1939). See *Murphy* v. *Bohn*, 377 Mass. 544, 548 (1979).

The legislative history of this enactment provides some insight into the legislative intent. A predecessor of § 135 was first introduced in 1971. The 1971 and 1972 versions of the bill (1971 House Doc. No. 4877; 1972 House Doc. No. 1997) contained the exception now embodied in (*b*) and additionally contained an exception which would have required a social worker who acquired information indicating that a child under sixteen years of age was the victim of a felony to "testify fully in relation thereto, upon any examination, trial or other proceeding in which the commission of such felony or need for care and protection is a subject of inquiry." The later versions of the bill, including the 1977 version which was enacted, did not contain this exception. St. 1977, c. 818, § 2. The textual differences between the rejected bills and the statute seem to indicate that the Legislature chose not to require a social worker to testify fully about confidential information even when the crime involved a minor.[5] The Legislature amended the statute in

---

[4] We note that Rule 503 of the Proposed Massachusetts Rules of Evidence would combine the present psychotherapist-patient privilege (G. L. c. 233, § 20B), and the social worker-client privilege. The Advisory Committee decided not to include the exception embodied in § 135 (*b*) because it "is believed to be so ambiguous and broad as to drastically impair the value and meaning of the privilege." Advisory Committee Note to Proposed Mass. R. Evid. 503. Instead, the proposed rule would provide that the privilege established by the rule would not apply when there is a "threat of imminently dangerous activity by the patient against himself or another person."

[5] We note that a number of other States which have enacted similar social worker privilege statutes have included an exception requiring a social worker to testify fully when a child is a victim of a crime. See Ark. Stat. Ann. § 71-2815 (*c*) (Supp. 1981); Colo. Rev. Stat. § 12-63.5-115 (2) (c) (1978); Del. Code Ann. tit. 31, § 3731 (3) (Supp. 1980); Idaho Code

1981 to provide that the privilege does not apply to care and protection proceedings and does not apply to a child custody case where the judge determines that it is more important to the welfare of the child that the information be disclosed than that the confidential relationship between the person and social worker be protected. G. L. c. 112, § 135 (d) and (e). The 1981 amendment is evidence of an intent to protect the prospective well-being of a child, even when this conflicts with the confidential relationship. However, the amendments do not have a bearing on what the Legislature intended the scope of subsection (b) to encompass in a case such as the one before us. In this case, the well-being of a child is not at issue, but rather a criminal prosecution for past acts.

In light of the intent evidenced by the legislative history of the acts, particularly the fact that an exception for crimes against a minor was not included in the enacted bill, we are of the opinion that the Commonwealth's reading of subsection (b) is too broad. The Commonwealth's reading would require a social worker essentially to disclose all of the information he received in his professional capacity whenever a crime is involved. It would negate the privilege under this circumstance. If the Legislature had intended this result it could have included an exception stating that the privilege does not apply whenever a person is accused of criminal activity. It did not do so but rather exempted communications revealing a crime. We think that the Legislature evidenced two aims by the enactment of the statute and exception (b). The first objective is to encourage individuals in need of help from a social worker to seek that help by ensuring the confidentiality of their communications. The second objective, embodied in subsection (b), is to serve the interests of society in prosecuting those who are guilty of

Ann. § 54-3213 (3) (1979); La. Rev. Stat. Ann. § 37:2714B (2) (West 1974); N.Y. Civ. Prac. Law § 4508 (3) (Consol. 1978); S.D. Codified Laws Ann. § 36-26-30 (3) (1977). Another State, Kentucky, has an exception which requires a social worker to testify fully in a trial of any crime. Ky. Rev. Stat. Ann. § 335.170 (3) (Bobbs-Merrill 1977).

criminal conduct. In enacting subsection (*b*), the Legislature attempted to balance these two objectives. With these statutory goals in mind, we think that exception (*b*) should be narrowly construed to require disclosure by a social worker of communications which relate directly to the fact or immediate circumstances of a crime. The exception does not extend to all information which might be relevant in the prosecution of a person for a crime. The New York court in *Community Serv. Soc'y* v. *Welfare Inspector Gen.*, 91 Misc. 2d 383, 388 (N.Y. Sup. Ct. 1977), construing a strikingly similar provision in the New York statute, N.Y. Civ. Prac. Law § 4508 (Consol. 1978), reached the same result. The exception is not intended to allow the Commonwealth a "fishing expedition" or a convenient discovery device. On the other hand, it is not intended as a "shield behind which the commission of a homicide would be sheltered." *People* v. *Lipsky,* 102 Misc. 2d 19, 24 (N.Y. Monroe County Ct. 1979).

In the case before us, clearly the defendant's admissions of criminal activity are subject to compulsory disclosure as are other persons' statements which directly implicate the defendant in criminal activity. However, the defendant's alleged denials of wrongdoing and false statements to the social worker do not reveal the commission of a crime. While such denials may show a "consciousness of guilt" so as to be admissible at a criminal trial, they do not "reveal" the commission of a crime. See *Commonwealth* v. *Porter,* 384 Mass. 647, 653 (1981), and cases cited. The other communications from the defendant and others which concern "the child's appearance and behavior prior to her hospitalization and the feelings, observations, suspicions and hopes about the child and one another" are only encompassed in the exception if they directly relate to the immediate circumstances of a crime or harmful act. Most of this confidential information would not be subject to disclosure. In addition, much of it would be inadmissible hearsay at trial and no purpose would be served by its disclosure

beforehand. It is not possible for us to state with any degree of precision what types of information in this case, or cases which may arise in the future, come within exception (*b*). Rather the determination in each case must be left to the trial judge.

4. *In camera hearing.* Though the judge did not frame a question concerning an in camera hearing, we deem it desirable to treat the question because it will be necessary to confront the issue on remand. The statute has not set forth any procedure by which the trial judge can determine whether communications fall within exception (*b*). An examination of approved procedures in analogous cases may be helpful. Exception (*e*) of the same statute provides that in a child custody case the judge may hold a hearing in chambers to determine whether information significantly bearing on a person's ability to provide custody should be disclosed. The procedures which we set forth in *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 768-769 (1977), to protect certain statements made in court-ordered psychiatric examinations under G. L. c. 233, § 23B, are instructive. The in camera hearing is the proper procedure to allow the judge to determine whether or not the privilege applies to communications made to the social worker. In *United States* v. *Nixon*, 418 U.S. 683 (1974), the Supreme Court upheld a District Court's order of an in camera inspection of presumptively privileged material belonging to the President of the United States who had claimed an executive privilege. The judge was to isolate the evidence which he determined admissible and relevant and return the other material under seal to its lawful custodian. *Id.* at 714-715. In *Commonwealth* v. *Lewinski*, 367 Mass. 889, 903 (1975), we held that when ruling on a defendant's motion for disclosure of written statements of prosecution trial witnesses, the judge may be obliged to examine a statement in camera. We said in *Lewinski* that "[i]f the judge denies or limits disclosure and the defendant objects, the material in question should be identified so that in case of conviction and appeal it may be sealed and transmitted to the reviewing court." *Id.* See

also *Commonwealth* v. *Zezima*, 365 Mass. 238, 242 n.4 (1974).

Other States have utilized the in camera hearing to determine whether possibly privileged information should be disclosed to an adverse party. In a Pennsylvania case, *Matter of Pittsburgh Action Against Rape*, 494 Pa. 15 (1981), the defendant, who was accused of rape, sought access to the files of a rape crisis center because he wanted to search for the victim's prior inconsistent statements. Although no statutory privilege applied to the center's file, the court acknowledged the importance of protecting the victim's privacy. The court held that the defendant had a right to examine the victim's statements in the file but had no right to see the entire file or to see any information other than the victim's statements. The court directed the trial judge to look at the file in camera and to determine whether any of the victim's statements were contained in the file. After making such a review, the trial judge was to determine what parts of the file, if any, the defendant would be allowed to see. *Id.* at 28-29. The New York Appellate Division, in *Hickox* v. *Hickox*, 64 A.D.2d 412 (N.Y. 1978), directed an in camera inspection of hospital records by the trial judge, to determine which parts of the records, if any, would be disclosed to the adverse party and which parts were protected by the physician-patient privilege.

The California courts often use an in camera hearing to rule on a claim of privilege. In *Mavroudis* v. *Superior Court*, 102 Cal. App. 3d 594 (1980), the plaintiffs sought the production of certain psychiatric records without the patient's consent. The plaintiffs argued that an exception to California's psychotherapist-patient privilege applied to the records and made them subject to discovery. The court ruled that the determination of whether the exception applied was a matter for the trial judge and that the determination should be made after the judge examined the records in camera. *Id.* at 604-606. In another case, the California Supreme Court ruled that when a court is deciding a claim of privilege and is unable to do so without requiring the dis-

closure of the information claimed to be privileged, the court may require disclosure of the information sought in chambers out of the presence of all other persons. *In re Lif- schutz*, 2 Cal. 3d 415, 437 n.23 (1970).

The Commonwealth argues that the prosecutor and defense counsel should be present at the in camera hearing because the judge may require their assistance in determining the relevance of the communications. The defendant argues that the prosecutor should not be present because the disclosure in the presence of the prosecutor is a violation of the client's confidentiality and argues also that even if the judge rules that certain testimony may not be used at trial, the prosecutor may indirectly use such evidence against the defendant. The social worker and the amicus argue that if a hearing is to be held, only the judge and social worker should be present. Otherwise, they argue, regardless of whether any of the communications are subsequently disclosed, the privilege has been violated. They contend that the presence of the prosecutor or the defense attorney nullifies the statute.

We agree that disclosure of the confidential information to the prosecutor or the defense attorney in the in camera hearing may seem to frustrate the purpose of the statute. The statute provides that the information is not to be disclosed unless it falls within one of the statutory exceptions. It follows that third persons should not be present during this determination because there is a strong likelihood that some of the disclosed information will not come within an exception and will remain privileged. Its disclosure would, therefore, not be permitted. The determination of which information comes within exception (*b*), because it reveals the contemplation or commission of a crime or harmful act, is a legal question for the judge's consideration. See *Commonwealth* v. *Stokes*, 374 Mass. 583, 595 (1978); *Commonwealth* v. *Zezima, supra*; *United States* v. *Nixon, supra*; Proposed Mass. R. Evid. 104 (*a*) (July, 1980); McCormick, Evidence § 53 (2d ed. 1972). Though the disclosure to the judge divulges the possibly privileged information, it is a practical necessity because the determination of whether

the exception applies can be made only when the content of the communication is disclosed. See *In re Lifschutz*, 2 Cal. 3d 415, 437 n.23 (1970); *Mavroudis* v. *Superior Court*, 102 Cal. App. 3d 594, 606 (1980). The judge should phrase his questions to the social worker so as to limit the social worker's disclosures to information likely to fall within the exception. The record of the in camera hearing should be sealed and should remain sealed until a judge otherwise orders. In most cases, the judge will be able to make the decision whether or not the information is privileged without the parties' assistance. However, if factual questions arise, the judge may require the assistance of the parties, but must do so without revealing the content of the confidential communications.

5. *Conclusion.* Question No. 1 is answered in parts 2 and 3 of this opinion. The answer to question No. 2 is, Yes.


LYNCH, J. (dissenting). This case requires us to construe the following sentence: "No social worker . . . may disclose any information he may have acquired *from persons consulting him in his professional capacity* . . ." (emphasis supplied). G. L. c. 112, § 135, inserted by St. 1977, c. 818, § 2. In her amicus brief, the social worker asserts only that she was "assigned to treat the [victim's] family" and that, "in her professional capacity," she received "confidences" from the defendant, members of the victim's family, and others. On the basis of these sketchy allegations, the majority states that "[t]he defendant appears to be a person who consulted the social worker in her professional capacity" and concludes that the defendant "is therefore entitled to claim the privilege under the statute." I agree that the defendant is entitled to a hearing to determine whether the privilege is applicable to the information which the Commonwealth seeks to have the social worker disclose. I do not agree, however, that the social worker's unsubstantiated version of the circumstances under which she received information from the defendant is enough to form a proper basis for this determination.

The language of the statute is neither peculiar nor technical but is comprised of familiar words combined to express a single thought. Thus it should be construed according to the common and approved use of this language. *New England Medical Center Hosp.* v. *Commissioner of Revenue,* 381 Mass. 748, 750 (1980). The plain meaning of the verb "consult," is "to ask advice of" or "seek the opinion of." Webster's Third New Int'l Dictionary 490 (1961). To "consult" a social worker or other professional means, in the common understanding of the term, to seek that professional's advice or opinion. It is the confidences of persons *seeking* such advice that the statute in question was intended to protect. Cf. *Usen* v. *Usen,* 359 Mass. 453, 457 (1971) (quoting *In re Lifschutz,* 2 Cal. 3d 415, 431 [1970], referring to "the justifiable expectations of confidentiality that most persons seeking psychotherapeutic treatment harbor"). There is nothing in the record on which to base the conclusion that the defendant *consulted* with the social worker, in the sense of seeking her advice or opinion, at any time.

Nor is there anything in the record to indicate that the defendant has established, or could establish, the existence of the first of the "four basic and fundamental conditions which must be present to establish a privilege, whether the privilege is set forth by statute or common law, to wit: 1. The communications must originate in a *confidence* that they will not be disclosed" (emphasis in original).[1] *State* v. *Martin,* S.D. , (274 N.W.2d 893, 895 [S.D.]), cert. denied, 444 U.S. 883 (1979), quoting from 8 J. Wigmore, Evidence § 2285, at 527 (McNaughton rev. 1961). See *Wisconsin* v. *Driscoll,* 53 Wis. 2d 699, 706 (1972). I find no basis for the majority's assumption that the social worker made assurances of confidentiality to any

---

[1] The other conditions are: "(2). This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties. (3). The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.* (4). The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation" (emphasis in original). 8 J. Wigmore, Evidence § 2285, at 527 (McNaughton rev. 1961).

or all of her informants, or that the defendant relied on such an assurance in making the statements that he did. Cf. *Commonwealth* v. *Maltais, ante* 79, 89-90 (1982) (rejecting the defendant's argument that his statements to police were not constitutionally voluntary "because certain of those statements were inculpatory and no intelligent individual, absent coercion or trickery, would make inculpatory statements to police officials").

The majority construes overbroadly the phrase "persons consulting [the social worker] in his professional capacity." They would have it read, "persons *from whom the social worker acquires information* in the course of his professional duties." Their construction gives the "social worker privilege" a far greater scope than that of any common law or statutory privilege previously recognized. For example, the attorney-client privilege protects only those communications made by the client in the course of seeking legal advice (as opposed to moral advice, even on legal matters). *Hatton* v. *Robinson*, 14 Pick. 416, 423-424 (1833). Further, even those communications between attorney and client which otherwise would be privileged lose that status if third parties (not agents of either attorney or client) are present when the communications are made. *Drew* v. *Drew*, 250 Mass. 41, 44-45 (1924).[2] According to the majority's reasoning, virtually all communications with social workers which occur during their performance of their duties must be found privileged, regardless whether third parties are present or assurances of confidentiality have been made, unless these communications fall within the exemptions listed in G. L. c. 112, § 135 (a)-(e). Apparently, no distinction is to

___

[2] See also G. L. c. 233, § 20A, inserted by St. 1962, c. 372 (priest-penitent privilege limits disclosure only of a "confession made to [the priest, rabbi, or ordained or licensed minister of any church, or an accredited Christian Science practitioner] in his professional character, *in the course of discipline enjoined by the rules or practice of the religious body to which he belongs*" [emphasis supplied]); G. L. c. 233, § 20B, inserted by St. 1968, c. 418 (only those communications between psychotherapist and patient "*relative to the diagnosis or treatment of the patient's mental or emotional condition*" [emphasis supplied] are privileged).

be drawn between counselling and the myriad other investigative and administrative tasks performed by social workers. I believe that the Legislature's limitation of the privilege to information acquired by the social worker *from persons consulting him* requires making that distinction.

I would remand the case to the Superior Court for a determination whether (a) the defendant and others contacted by the social worker had reason to believe that their communications would be held confidential, and (b) the defendant (and the others) sought the social worker's advice or assistance at any time during their communications. If the answer to either question is in the negative, the statutory privilege does not apply.[3]

I agree that concern for confidentiality requires this determination to be made by the judge, based on his examination of the social worker (and, if necessary, other witnesses) in the absence of the prosecutor or defense counsel. In order to make possible judicial review of the judge's decision, however, the proceedings should be recorded. (I would permit the presence of a court reporter.) In addition, the judge should make written findings of fact setting forth the basis for his decision. Absent such findings, parties would have no means of ascertaining whether the judge's decision to exclude information as privileged was justified. These findings should exclude, of course, any mention of the information regarding which the privilege is asserted.

The majority's decision in this case seems to slight the principle in this Commonwealth that "the public 'has a right to every man's evidence' . . . [which] has been preferred, on the whole, to countervailing interests." *Matter*

---

[3] It is possible, of course, that some (but not all) of the information sought by the Commonwealth would be found to be privileged. I agree with the majority, however, that much of the information sought by the Commonwealth regarding "the child's appearance and behavior prior to her hospitalization and the feelings, observations, suspicions and hopes that the defendant and the others interviewed held about the child and one another" would be inadmissible hearsay at trial and need not be disclosed; in addition, at least some of the information sought would appear to be irrelevant.

*of Pappas,* 358 Mass. 604, 607 (1971), quoting from 8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961). On this record, no trier of fact reasonably could determine whether the defendant or others "consult[ed the social worker] in [her] professional capacity." As a result, no conclusion can be drawn regarding whether the Legislature intended that information arguably relevant to determining the truth of the charges brought against the defendant should be kept from the prosecutor and, eventually, the jury. Accordingly, I respectfully dissent.