[Civ. No. 46368. First Dist., Div. Three. Feb. 26, 1980.]

MILTON MAVROUDIS et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY,
Respondent;
KAISER FOUNDATION HOSPITALS et al.,
Real Parties in Interest.

**COUNSEL**

Herbert W. Yanowitz for Petitioners.

No appearance for Respondent.

McNamara, Lewis, Dodge & Houston, Richard E. Dodge, Paul M. Hoff, Robert M. Slattery, Campbell, Warburton, Britton, Fitzsimmons & Smith, John R. Fitzsimmons, Jr., John H. MacConaghy, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Michael J. Brady and Mark G. Bonino for Real Parties in Interest.

OPINION

**SCOTT, J.**—Petitioners Milton and Betty Mavroudis seek a writ of mandate to compel respondent superior court to order the production of certain psychiatric records. In the alternative, they request the records be delivered to their psychiatric expert, under a protective order, for examination to determine whether they contain evidence which would indicate real parties in interest knew, or reasonably should have known, that the psychiatric patient presented a serious danger to petitioners.

The question presented is how a plaintiff in an action brought pursuant to the Supreme Court's holding in *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], can obtain discovery of psychiatric records of defendant's patient without that patient's consent.

Petitioners commenced the underlying action for damages for personal injuries against defendants and real parties in interest, Kaiser Foundation Hospitals, Mary's Help Hospital, Redwood House, and County of San Mateo. The complaint in essence alleges that petitioners' son, Robert, attacked petitioners with a hammer, causing them multiple physical injuries; Robert was treated by real parties in interest for various mental disorders; real parties in interest knew or reasonably should have known that Robert posed such a danger; and real parties in interest failed to warn petitioners that Robert posed a serious threat of danger to them.

Petitioners filed and served upon all real parties in interest requests to produce medical records relating to Robert. Mary's Help Hospital objected to petitioners' request on the ground that the requested records were confidential under Welfare and Institutions Code section 5328, and that the records are privileged under Evidence Code section 1014. The remaining real parties in interest did not respond to petitioners' request.

Petitioners then moved pursuant to Code of Civil Procedure section 2031, subdivision (a) to compel the production of the records. After allowing appointed counsel for Robert to appear on the motion, the respondent superior court ordered that all real parties in interest submit the requested records to the court for an *in camera* inspection. After reviewing the requested records, respondent superior court denied the

motion on the ground that "there is no information contained in said records which would indicate to the defendants that they should warn plaintiffs herein that Robert Mavroudis presented a serious danger of violence to the plaintiffs." In a motion to reconsider, which was denied, petitioners requested that real parties produce their records for inspection by a psychiatrist retained by petitioners under a protective order providing that, unless the psychiatrist concludes that the records contain evidence which would indicate that any or all of the real parties knew, or reasonably should have known, that Robert presented a serious danger of violence to petitioners, he would not disclose the contents of the records to petitioners' counsel or others. The motion was made on the ground that a proper determination of whether the records contained such evidence required evaluation by an expert, the judge not being competent to evaluate what a psychiatrist "reasonably should have known." The trial court was of the view that a cause of action arose under the holding of *Tarasoff* v. *Regents of University of California* only when "a therapist has actual knowledge that the therapist's patient presents a danger to particular individuals."

Petitioners then filed a petition in this court and we issued an alternative writ of mandate.

■ The writ of mandate is a proper remedy for the review of discovery orders. (*Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924 [114 Cal.Rptr. 603, 523 P.2d 643].) Though a proper remedy, it is not normally granted in such cases. (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161 [84 Cal.Rptr. 718, 465 P.2d 854].) We were impelled to issue the alternative writ in this case because we are presented with a question of first impression of general importance to the legal community, and in conjunction with which general guidelines can be laid down for future cases.

Respondent superior court's interpretation of *Tarasoff* is erroneous on two points. It limits the court's holding to cases where the therapist has *actual* knowledge of the danger, and to cases where the danger is present toward *particular* individuals. ■ However, the *Tarasoff* court stated the duty to use reasonable care to protect the intended victim arises whenever a therapist *determines, or* pursuant to the standards of the profession *should determine*, that his patient presents a serious danger of violence to another. The court stated its holding in these terms: "When a therapist determines, or pursuant to the standards

of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances." (17 Cal.3d at p. 431.) In addition, the intended victim need not be specifically named by the patient. In *Tarasoff*, the patient did not name his intended victim but she was "readily identifiable." The court indicated what it meant by "readily identifiable" in a footnote in which it recognized that it would be unreasonable to require the therapist to interrogate the patient or to conduct an independent investigation to discover the patient's intended victim's identity. On the other hand, it stated that there are cases in which a "moment's reflection" will reveal the victim's identity. In such cases, the court indicated that the therapist had a duty to protect that person from the danger presented by his patient. (*Id.*, at p. 439, fn. 11.)

In applying the holding in *Tarasoff*, courts should be cautious not to construe it too broadly. The Supreme Court recognized the difficulty a therapist encounters in attempting to forecast whether a patient presents a serious danger of violence. The therapist need not render a perfect performance but merely exercise "'that reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of [that professional specialty] under similar circumstances.'" (17 Cal.3d at p. 438.) The therapist is not liable for the injuries caused by his patient if his judgment proves wrong, so long as it was reasonable under the circumstances. "Within the broad range of reasonable practice and treatment in which professional opinion and judgment may differ, the therapist is free to exercise his or her own best judgment without liability; proof, aided by hindsight, that he or she judged wrongly is insufficient to establish negligence." (*Id.*, at p. 438.) The therapist's duty is further limited by his patient's interest in privacy. The psychiatrist's duty to preserve the privacy of his patient requires that he not disclose a confidence of his patient "unless such disclosure is *necessary* to avert danger to others." (*Id.*, at p. 441, italics added.) An assessment of the necessity of the disclosure which gives rise to the therapist's duty must take into account the imminence of the danger posed by the patient. If the patient does not pose an imminent threat of serious danger to a readily identifiable victim, a disclosure of the pa-

tient's confidence would not be necessary to avert the threatened danger and the therapist would be under no duty to make such a disclosure. (See Fleming & Maximov, *The Patient or His Victim: The Therapist's Dilemma* (1974) 62 Cal.L.Rev. 1025.)

We conclude that the court's holding in *Tarasoff* means that the therapist's duty of care to protect the intended victim against threatened danger presented by the therapist's patient arises when the therapist determines, or reasonably should have determined, that his patient presents a serious and imminent danger of violence to a readily identifiable victim.

We turn now to the issue of whether petitioners may compel the production of the records which are the subject of this proceeding. We start with the basic principle that there can be no discovery of material which is privileged. (Code Civ. Proc., §§ 2016, subd. (b), 2031.) ▇ Real parties assert that the psychiatric records which are the subject of this proceeding fall outside the scope of discovery because they are made confidential by Welfare and Institutions Code section 5328, and are privileged under Evidence Code section 1014.

Welfare and Institutions Code section 5328 contains a general prohibition, subject to defined exceptions, against disclosure of information and records obtained in the course of providing services under specified sections of the Welfare and Institutions Code. At the time of this proceeding, it provided, in pertinent part: "All information and records obtained in the course of providing services under [various divisions of the Welfare and Institutions Code] to either voluntary or involuntary recipients of services shall be confidential. . . . Information and records may be disclosed only:

"
. . . . . . . . . . . . . .

"(f) To the courts, as necessary to the administration of justice." This general prohibition extends only to those records specifically described in the statute. (*Tarasoff, supra,* 17 Cal.3d at p. 443.)

The record in the instant proceeding does not reveal sufficient information regarding the character of the real parties in interest and the conditions under which treatment was provided Robert to determine the applicability of section 5328. Petitioners, however, have not contested

this point. Instead, they contend that subdivision (f) of that statute authorizes disclosure to the courts in this case. That subdivision allows disclosure to the courts, "as necessary to the administration of justice." The "subdivision contemplates use of the information or records 'as necessary to the administration of justice' in some pending judicial action or proceeding." (*County of Riverside* v. *Superior Court* (1974) 42 Cal.App.3d 478, 481 [116 Cal.Rptr. 886].) The clear language of Welfare and Institutions Code section 5328, subdivision (f) authorizes the disclosure of the evidence here requested unless such evidence is otherwise nondisclosable.

The second statutory ground which real parties present as a bar to disclosure is Evidence Code section 1014,[1] which establishes the psychotherapist-patient privilege. The psychotherapist-patient privilege is applicable to this case: the records subject to this proceeding contain confidential communications between a patient and a psychotherapist, and the privilege has been claimed by a party authorized to do so by statute. (Evid. Code, §§ 1012, 1014, subd. (c).) The authorization for disclosure provided by Welfare and Institutions Code section 5328, subdivision (f) does not override the privilege created by Evidence Code section 1014. (*In re S. W.* (1978) 79 Cal.App.3d 719 [145 Cal.Rptr. 143].) Therefore, the records subject to this proceeding are not subject to discovery unless the psychotherapist-patient privilege has been waived, or an exception to this privilege applies with respect to these records.

■ Petitioners contend that the privilege was waived when real parties in interest failed to assert it in response to petitioners' request for the production of documents and the original motion to compel production. This position lacks merit. Only the "holder" of a privilege may waive. (Evid. Code, § 912.) The holder of the psychotherapist-patient privilege is the patient, or, in appropriate cases, the patient's guardian or personal representative. (Evid. Code, § 1013.) The therapist has no

---

[1]Evidence Code section 1014 provides, in relevant part: "Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by:

"(a) The holder of the privilege;

"(b) A person who is authorized to claim the privilege by the holder of the privilege; or

"(c) The person who was the psychotherapist at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure."

power to waive the patient's privilege and, in fact, is under a duty to assert it. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 341 [107 Cal.Rptr. 309, 508 P.2d 309]; Evid. Code, § 1015.)

▪ Petitioners next contend that the exception provided in section 1024 of the Evidence Code is applicable. That section provides: "There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger." Section 1024 represents the judgment of the Legislature that the public interest in the confidential character of patient-therapist communications must yield to the public interest in safety from violent assault. (*Tarasoff, supra*, 17 Cal.3d at pp. 440-441.) Enacted prior to the holding in *Tarasoff*, it apparently was designed to enable the therapist to initiate commitment proceedings and to testify in those proceedings when he determines the patient may present a danger to himself or others.

A literal reading of Evidence Code section 1024 would limit its provisions to a prospective application. Both the language of the statute and the Law Revision Commission comment speak in terms of "threatened danger." There is authority, however, for a retrospective application of the section. In *People* v. *Hopkins* (1975) 44 Cal.App.3d 669 [119 Cal.Rptr. 61], defendant sought to suppress his confession which had led to his subsequent conviction of burglary, robbery, malicious injury of telephone equipment, and assault. Defendant and another man had forced their way into the apartment of an elderly woman, inflicted various injuries upon her, took her money and tied her up with a telephone cord. Later the same day, defendant told a psychiatrist and two nurses of his participation in the crimes, who in turn told the police. The information led to the defendant's arrest and subsequent confession. Defendant brought a motion at trial to suppress the confession, citing the psychotherapist-patient privilege, which motion was denied. The appellate court sustained the trial court, holding that, even assuming defendant's arrest resulted from the disclosure to a person who was a psychotherapist and that the disclosure was a confidential communication, the trial court could reasonably have concluded that the case came within the provisions of section 1024.

Though the disclosure at trial was no longer necessary to prevent threatened danger, the court in *People* v. *Hopkins, supra*, relied upon

section 1024 when the conditions upon which that section is predicated existed at the time of the original disclosure. Similarly, in a civil proceeding in which the plaintiff alleges a breach of the defendant therapist's duty enunciated in *Tarasoff*, the court may determine the applicability of the exception after the fact. If the preliminary facts upon which Evidence Code section 1024 rests were present at a time prior to the injury complained of, section 1024 prevents any privilege from attaching and the psychiatric records are subject to discovery in the subsequent proceeding. (See Comment, *Discovery of Psychotherapist-Patient Communications After Tarasoff* (1978) 15 San Diego L.Rev. 265.)

The exception to the psychotherapist-patient privilege provided by section 1024 is applicable only if the specified conditions in the statute are present. In an action such as this one, alleging that a defendant therapist has breached the duty of care enunciated in *Tarasoff*, section 1024 must be read in light of that decision. The exception is applicable if the court finds that, prior to the time of the injury complained of, the therapist determined, or reasonably should have determined, that the therapist's patient presented a serious danger of violence to a readily identifiable victim and the disclosure of confidential communications was necessary to prevent the threatened danger.

■ Petitioners, arguing that respondent superior court is not competent to determine what a therapist should reasonably have determined, contend that the records should be delivered to their psychiatric expert, under a protective order, for his determination of the existence or nonexistence of the facts upon which section 1024 is predicated. This position lacks merit. It is the function of the court to determine the existence or nonexistence of a preliminary fact upon which a rule of evidence is predicated. (Evid. Code, § 405.)[2] That determination, under certain circumstances, may require expert assistance.

---

[2]Evidence Code section 405 provides: "With respect to preliminary fact determinations not governed by Section 403 or 404:

"(a) When the existence of a preliminary fact is disputed, the court shall indicate which party has the burden of producing evidence and the burden of proof on the issue as implied by the rule of law under which the question arises. The court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises.

"(b) If a preliminary fact is also a fact in issue in the action:

"(1) The jury shall not be informed of the court's determination as to the existence or nonexistence of the preliminary fact.

"(2) If the proffered evidence is admitted, the jury shall not be instructed to disregard the evidence if its determination of the fact differs from the court's determination of the preliminary fact."

The following procedure should be utilized by respondent superior court in making its determination of the existence or nonexistence of the facts upon which section 1024 is predicated. The court should initially examine the records *in camera* to determine if the material therein reveals that petitioners were readily identifiable as victims of Robert in the event it is ultimately determined that Robert posed a serious threat of violence to others. This determination would not necessitate resort to expert assistance. If the court's examination negates such a finding, section 1024 is not applicable and the records are not subject to discovery.

If the court, after its initial examination, finds that petitioners were readily identifiable as victims of Robert, it must then determine whether real parties in interest determined, or reasonably should have determined, that Robert posed a serious danger of violence to petitioners and whether the disclosure of confidential communications was necessary to prevent that threatened danger. Whether a therapist reasonably should have made these determinations is to be measured against the standard of care in the profession. (*Tarasoff, supra,* 17 Cal.3d at p. 438.) In certain cases expert testimony may be essential to determine the standard of care within the therapist's profession, but in many cases the trial court is competent to make such a determination without expert assistance. (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1].) For example, where the patient has made an actual threat of violence or the therapist has actually determined that the patient posed such a danger, the trial court is competent to rule, as a matter of law, that section 1024 is applicable without expert assistance. Conversely, where the records are devoid of any indication that the patient may be violent such that no man, under any reasonable standard of care, would have made such a determination, the court is competent to rule, as a matter of law, that section 1024 is not applicable. In all other cases it is necessary that the court receive expert testimony to establish the standard of care in the profession. Once the expert reviews the records and gives testimony regarding the applicable standard of care, the court then is competent to determine the existence or nonexistence of the preliminary facts upon which Evidence Code section 1024 is predicated.

To preserve the confidentiality of the records, where expert testimony is required, the court should appoint its own expert, pursuant to Evidence Code section 730, rather than relying upon an expert retained by

one of the parties, and receive his testimony in an *in camera* proceeding.

 Real parties in interest contend that the court may not require the disclosure of allegedly privileged communications when ruling on a claim of privilege, except in certain specified cases not relevant here. Real parties cite Evidence Code section 915[3] in support of their argument. As a general rule, their statement is correct. However, where an exception to a privilege depends upon the content of a communication, the court may require disclosure *in camera* in making its ruling.[4] (*In re Lifschutz* (1970) 2 Cal.3d 415, 437, fn. 23 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].)

In holding that Evidence Code section 1024, upon a proper showing, applies in the context of this type of action, we are not unmindful of the justifiable expectations of confidentiality that patients likely harbor in seeking psychotherapeutic treatment. The patient's interest in keeping psychiatric records confidential has its roots in his constitutionally protected right of privacy. (*In re Lifschutz, supra; Britt* v. *Superior Court* (1978) 20 Cal.3d 844 [143 Cal.Rptr. 695, 574 P.2d 766].) Although this interest has constitutional underpinnings, all state interference with such confidentiality is not prohibited. Provisions tailored to serve the historically important state interest in facilitating the ascertainment of truth in connection with a legal proceeding are not constitutionally infirm. (*In re Lifschutz, supra.*)

---

[3]Evidence Code section 915 provides in relevant part that a court "may not require disclosure of information claimed to be privileged under this division in order to rule on the claim of privilege."

[4]An *in camera* determination is authorized by Evidence Code section 915, subdivision (b) when the court is ruling on a claim of privilege of official information, identity of informer or trade secret. The Supreme Court has suggested that the procedure outlined in that section also be utilized by a court when ruling upon a claim of privilege of psychotherapist-patient communications which depend upon the content of the communication. (*In re Lifschutz* (1970) 2 Cal.3d 415, 437, fn. 23 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) Section 915, subdivision (b) provides: "When a court is ruling on a claim of privilege [of official information, identity of informer, or trade secret] . . .and is unable to do so without requiring disclosure of the information claimed to be privileged, the court may require the person from whom disclosure is sought or the person authorized to claim the privilege, or both, to disclose the information in chambers out of the presence and hearing of all persons except the person authorized to claim the privilege and such other persons as the person authorized to claim the privilege is willing to have present. If the judge determines that the information is privileged, neither he nor any other person may ever disclose, without the consent of a person authorized to permit disclosure, what was disclosed in the course of the proceedings in chambers." (See *Lemelle* v. *Superior Court* (1978) 77 Cal.App.3d 148 [143 Cal.Rptr. 450].)

Accordingly, upon reconsideration pursuant to the writ ordered herein of petitioners' motion to compel the production of Robert's psychiatric records, respondent superior court should determine whether Evidence Code section 1024 authorizes the discovery of the requested documents in this case. In making that determination the court should order the documents to be produced for its *in camera* review. The court should determine whether the therapists, prior to the time of the injury complained of, determined, or reasonably should have determined, that Robert presented a serious danger of violence to petitioners, and that disclosure was necessary to avert the threatened danger. Petitioners need not have been named by Robert as intended victims, but must have been readily identifiable as such by the therapists prior to the time of the injuries complained of.

Costs for prosecuting this writ petition are awarded petitioners against real parties in interest.

Let a peremptory writ of mandate issue directing respondent to vacate its order denying production of psychiatric records, to reconsider the motion in accordance with the views expressed herein, and to make an award of costs in favor of petitioners.

White, P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied March 27, 1980.