## Kreiser Estate v. Kreiser

*Horace M. Ehrgood,* for defendant David E. Kreiser.

*Bradford H. Charles*, for additional defendant Dr. Cary.

GATES, *P.J.*, February 5, 1986 — This action stems from a complaint filed on November 20, 1984, by the administrator of the estate of Penny Kreiser. The complaint names David E. Kreiser and Lancaster Mennonite Hospital t/a Philhaven Hospital as defendants in a wrongful death action. A second complaint was filed by defendant Kreiser against Doctors Nguyen and Habegger.[1] Defendant hospital raised preliminary objections which were dismissed in a memorandum opinion rendered by this court on August 12, 1985. Presently before us are the preliminary objections of additional defendants to defendant Kreiser's complaint. Our discus-

---

1. Pa.R.C.P. 2252(a) allows this joinder.

sion of the issues applies to both Dr. Nguyen and Dr. Habegger.

The complaint against additional defendants contains two counts alleging gross negligence[2] on the part of the doctors in their treatment of Kreiser. The preliminary objections prompted by this complaint are in the nature of a demurrer, asserting that the complaint does not set forth a claim upon which relief may be granted.

We can sustain the demurrer only if it is clear on the face of the pleading that the law will not permit the recovery being sought. Any doubt must be resolved in favor of overruling the demurrer. *International Association of Firefighters Local 2493 v. Loftus*, 80 Pa. Commw. 329, 471 A.2d 605 (1984). A demurrer admits as true all well pleaded factual averments. Thus we find the following to be an accurate description of events leading to this action.

Kreiser, on the advice of a physician, sought psychiatric counseling at defendant hospital, where he was treated by the additional defendants. Kreiser informed the doctors that he had a gun and was afraid he might hurt himself or someone else; that he had a dream in which his wife was dead and he was afriad that he might be mentally ill. Kreiser requested admission to the hospital for inpatient treatment. The doctors did not admit Kreiser to the hospital, but prescribed psychotropic medication. Kreiser was not, however, apprised of the drug's possible side effects. Three days after seeking help from the

---

2. The doctors' reliance on the Pennsylvania Mental Health Procedures Act (50 P.S. 7114(a)) as giving rise to immunity from suit is misplaced. The act specifically excludes willful misconduct or gross negligence from its immunity provision.

doctors, Kreiser shot and killed his wife Penny Kreiser. Kreiser subsequently pleaded guilty to third-degree murder, and this civil suit was brought on behalf of the decedent.

In his complaint, Kreiser alleges that he has suffered damages as a result of the doctors' gross negligence which consisted of reckless and/or willful absence of ordinary care and/or failure to use ordinary care to a degree which resulted in a disregard for the safety of Kreiser and his wife. Specifically, the complaint alleges that the doctors were grossly negligent in failing to admit Kreiser as an inpatient, disregarding Kreiser's suicidal and homicidal ideation, failing to advise Kreiser of the potential side effects of the medication prescribed and failing to exercise ordinary care in regard to the safety of Kreiser, and his wife.

The first contention of additional defendants is that Kreiser is barred from recovering by Pennsylvania's Slayer Act.[3] Section 8802 of the act provides that "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following."[4] "Slayer" is defined as one who participates in the willful and unlawful killing of another. Under the act's definitions, Kreiser could be considered a slayer. Kreiser is not, however, attempting to recover property from the estate of his victim. Rather, Kreiser is seeking damages which he claims resulted from the allegedly negligent psychiatric care he received from the doctors.

---

3. 20 Pa.C.S. §8801 et seq.

4. A scheme of distribution is described in section 2 of the act based on the principal that the slayer predeceased the decedent.

As might be expected, cases interpreting the Slayers Act deal with individuals who wrongfully killed another, then attempted to collect property, or a monetary interest from the decedent's estate. The oft-cited case in this area, *In re Kravitz Estate*, 418 Pa. 319, 211 A.2d 443 (1965), points out that ". . . the intent of the Legislature and the language of the Slayers Act are, . . . clear — a person convicted of murder is not entitled to receive any property of the person he (or she) wilfully of unlawfully killed." *Kravitz* at 327.

If it can be shown that the doctors breached a duty owed to Kreiser, he will be recovering damages from them, not from the decedent's estate. Thus, we do not find this proceeding barred by the Slayers Act.

In a second argument, additional defendants assert that conviction of a serious crime estops a criminal defendant from relitigating the same issues in civil court. Our state Supreme Court has recognized that the issue of guilt or innocence of a defendant may not be relitigated in a civil action. See *Kravitz*, supra. Following a valid criminal conviction, a defendant should not be allowed ". . . to deny that which was established by his prior criminal conviction, without proof that his conviction was procured by fraud, perjury or some manner of error now sufficient to upset the conviction itself. . . ." *Hurtt v. Stirone*, 416 Pa. 493, 499, 206 A.2d 624 (1965). *Hurtt* was an assumpsit action to recover money Stirone extorted from Hurtt. So the issue of the act of extortion could not be relitigated. His conviction in the criminal case closed the issue.

Defendant now before us is not contesting the validity of a prior criminal conviction but is alleging that additional defendants were grossly negligent. Kreiser's situation is distinguishable from that of

the appellant in *Kravitz* who wished to prove her innocence in a civil trial notwithstanding her second-degree murder conviction. Were Kreiser to argue issues pertaining to his guilt or innocence, he would indeed be collaterally estopped. The present action involves the issue of the doctor's gross negligence, which has not been litigated between the parties involved. Defendant Kreiser is not estopped from bringing this action.

Additional defendants argue that as a matter of public policy and equitable considerations, Kreiser should not be allowed to bring suit. The crux of these two arguments is that a criminal defendant should not be allowed to benefit from his wrongdoing. Additional defendants contend that since Kreiser was convicted of murdering his wife, he should not now be permitted to blame others for this deed, and he should not be allowed to enter court with "unclean hands."

While it is true that our courts do not encourage evildoers to seek various methods of avoiding their just desserts, it is also true that those who have suffered legitimate damages should be allowed to present their claims against those who, by willful misconduct or gross negligence, failed to properly discharge a duty owed.

Without further investigation, we cannot say at this juncture whether additional defendants were grossly negligent. The task of proving this claim will be left to Kreiser.

In *Vattimo v. Lower Bucks Hospital Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983) a criminal defendant, Vattimo, brought an action against a hospital which negligently failed to adequately supervise him. Vattimo, a diagnosed paranoid-schizophrenic with an "abnormal fascination with fire," set fire to his

hospital room contributing to the death of another patient. Vattimo was prosecuted for first-degree murder and arson and was subsequently joined as an additional defendant in a wrongful death action brought by the representative of the decedent. Justice Flaherty, speaking for the Pennsylvania Supreme Court, declared Vattimo could not recover for ". . . damages occasioned by the legal process, either civil or criminal . . ." because Vattimo had played an active role in the events leading to the criminal prosecution. *Vattimo*, supra, at 252. As for Vattimo's alleged damages for loss of income, mental anguish and public humiliation caused by the hospital's negligence, the court determined that a jury might differ as to whether the hospital was liable. The case was sent to the jury on the issue of the hospital's negligence.

If Kreiser was treated negligently by the doctors, he should have an opportunity, as did Vattimo, to litigate the issue. The question is one for the adjudicator of fact and should not be dismissed at this point.

Finally, the doctors contend that they were under no duty to control Kreiser nor did they have a duty to warn the decedent.

Doctors are held to a duty to exercise a reasonable degree of skill and knowledge ordinarily exercised by members of the same profession under similar circumstances. See *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971). The general rule enunciated by the Restatement (Second) of Torts §315 is that there is no duty to control the conduct of a third person to prevent him from causing harm to another unless a "special relationship" exists between the actor and the third person. It is a question prop-

erly put before the factfinder as to whether the above "special relationship" existed in Kreiser's situation.

Regarding any duty owed by additional defendants to the decedent, additional defendants correctly point out that no duty arises where the "victim" is unnamed or unspecified. *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 551 P.2d 334, 131 Cal. Rptr. 14 (1976). The *Tarasoff* case goes a bit further, however, in holding that the intended victim need not be specifically named by the assailant, just ". . . readily identifiable."

"[I]t would be unreasonable to require the therapist to interrogate the patient or to conduct an independent investigation to discover the patient's intended victim's identity. On the other hand, . . . there are cases in which a 'moment's reflection' will reveal the victim's identity. In such cases, . . . the therapist [has] a duty to protect that person from the danger presented by his patient." *Mavroudis v. Superior Court for the County of San Mateo*, 102 Cal. App. 3d 594, 162 Cal. Rptr. 724, 729 (1980).

In interpreting the *Tarasoff* decision, the court in *Mavroudis*, concluded that ". . . the therapist's duty of care to protect the intended victim arises when the therapist determines, or reasonably should have determined, that his patient presents a serious and imminent danger of violence to a readily identifiable victim." *Mavroudis* at 730.

Whether the doctors owed a duty to Penny Kreiser depends upon the facts. A proper determination of this question rests with the adjudicator of facts.

Based upon the above discussion, we respectfully deny additional defendants' preliminary objections.

## ORDER

And now, February 5, 1986, the preliminary objections are dismissed with leave to answer the complaint within 30 days.