Filed 1/27/21  In re S.V. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re S.V., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E074641 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1900601) |
| v. | OPINION |
| C.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Matthew Perantoni, Judge.  Affirmed.

Law Office of Marissa Coffey and Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory Priamos, County Counsel, James E. Brown, Anna M. Marchand, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant C.V. (mother) contends that juvenile court jurisdictional and dispositional orders relating to her four children must be reversed. She argues that (1) a child custody evaluation report—initially prepared pursuant to Evidence Code section 730 in connection with separate family law proceedings—should not have been disclosed to the parties, or admitted and considered by the juvenile court; (2) the Welfare and Institutions Code[1] section 300, subdivision (b) allegations of the dependency petitions were improperly pleaded, and therefore were an inappropriate basis for the juvenile court to have taken jurisdiction over the children; and (3) the evidence was insufficient to support the juvenile court's jurisdictional findings. Mother raises no separate challenges to the juvenile court's dispositional orders, arguing only that they must be reversed if the jurisdictional orders are reversed.

We affirm the challenged findings and orders.

## I. BACKGROUND

This case involves four boys: M.V., born in 2002; A.V., born in 2003; D.V., born in 2005; and S.V., born in 2010. The children share the same mother, but the youngest has a different father. Mother is divorced from the father of the three older children. The father of S.V. was in a relationship with mother for about six months, they never married, and he reported that he only found out he had a child with her at the end of 2011. Neither of the fathers is a party in this appeal.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

The children came to the attention of plaintiff and respondent Riverside County Department of Public Social Services (DPSS) in April 2019 when it received five reports alleging S.V. was being subjected to general neglect, sexual abuse, emotional abuse, and physical abuse by his father. After investigation, the matter was closed as inconclusive, with a finding that there is "insufficient evidence" of any abuse. S.V. made "inconsistent" and "extreme" statements describing abuse, which could not be corroborated with physical evidence. It was noted that mother "has a history of alleging sexual abuse to the children, by the fathers of the children," and that although mother "appears genuine, emotional, and worried for the children's safety and well-being, she may have exaggerated the information shared by the child."

In August and September 2019, DPSS received another flurry of reports that S.V. was being abused by his father. Mother "shared a picture" of S.V. that she claimed showed scars on S.V.'s head from his father beating him with "'a metal thing.'" She further claimed the father had taken S.V. for a weekend visit against S.V.'s wishes, and that afterward S.V. had attempted suicide by trying to jump out of a moving car, but someone in the car was able to stop him. DPSS reported it "was believed [S.V.] was hospitalized due to the incident." DPSS also received reports "from multiple reporting parties who [mother] talked to regarding the same allegations."

The social worker was subpoenaed to appear at a September 27, 2019 hearing in the family law division of the Superior Court regarding custody of S.V. While at the hearing, the social worker spoke to mother, who reported that S.V. was "on a second

3

psychiatric hold due to suicide attempts." Mother stated that S.V. was suffering from "'flashbacks'" and "'nightmares'" of abuse that "he endured from the father." She lamented that the court had "'forced' [S.V.] to visit the father," and asserted that S.V. had threatened to kill himself after each visit.

At the same hearing, the social worker also spoke with S.V.'s father. He asserted that the allegations of abuse were false, that mother had coached S.V. to make allegations against him, and that she "convinces S.V. to believe the allegations are true." The father said that he was afraid for S.V.'s safety, and that he wished for S.V. "to be safe and happy" and for mother to get "assistance for her mental health concerns." At the time of the hearing, S.V.'s father had no contact with the child because of a temporary restraining order that was in place.[2] He expressed that he would "prefer[] to have custody of [S.V.] and he will continue to demonstrate he loves the child."

Also at the same hearing, the family law court ordered that DPSS be provided a copy of a child custody evaluation report, which had been prepared by James Husen, Jr., a clinical and forensic psychologist appointed by the court pursuant to Evidence Code section 730. The social worker also spoke directly with Husen. The report, which had been submitted to the family law court in August 2019, is a 90 page document, prepared on the basis of over 55 hours spent "evaluating the family." Husen opined that S.V. was being abused not by his father, but rather by mother. Apparently as a result of her own

_____

[2] The temporary restraining order would be dismissed a few days later, on October 2, 2019.

4

history of untreated trauma, mother was unconsciously, but falsely, casting S.V. as "broken and damaged" to gain the "status of 'the suffering saintly mother.'" Husen "identified multiple 'severe mental health concerns'" for mother, including "Major Depression, Post Traumatic Stress Disorder, Generalized Anxiety, and Factitious Disorder Imposed on Another (previously referred to as Munchausen By Proxy)."

In Husen's view, mother "truly believes she is protecting [S.V.] from Father and yet she is harming him immensely in her efforts." She "has coached [S.V.] to lie about his Father," though "her coaching has in large part been unconscious and perhaps delusional." Indeed, all four boys showed signs of coaching: "[I]t seemed to me that a great deal of effort had gone into all of them getting their story straight and consistent with one another. The emotion wasn't there though. It felt as if I was listening to boys who had learned lines for a play and I was their audience." Husen expressed that "[S.V.], his brothers, his sister, his mother, his mother's friends, and the counselors treating the family have all gone over the story [of S.V. being abused by his father] so many times with [S.V.] that they all believe it lock, stock, and barrel." Husen observed that "[a]ll the boys are extremely bonded to Mother," but opined that the bonding "appears to be of the traumatic type," that is, "an intense emotional bond born of abuse." He expressed "substantial concern" that mother "might do something rash," such as abduct [S.V.] and take him out of the United States to the country where she grew up, or "do some other harm to him" when she learned of the results of the evaluation.

5

DPSS took the four children into protective custody on October 1, 2019. S.V. was initially transported to a "confidential placement," while the older three were released to the care of their father. In an amended dependency petition, DPSS alleged that each of the children came within section 300, subdivision (b) (failure to protect), and that S.V. also came within subdivision (c) (serious emotional damage). Regarding subdivision (b), the petition included the following factual allegations: "The mother suffers from unresolved mental health issues, including but not limited to diagnoses of Major Depression, Post-Traumatic Stress Disorder, Anxiety, and Factitious Disorder Imposed on Another, which is limiting her ability to adequately parent the children, and is placing all of the children at risk of emotional harm." Regarding subsection (c), DPSS alleged: "[S.V.], is suffering from serious emotional damage due to the mother's mental health issues and behaviors, which includes coaching, conditioning, and training the child to make false allegations of severe sexual and physical abuse, and referring to him as a 'damaged child,' resulting in the child experiencing confusion, fear, anxiety, and [suicidal] ideation."

At the detention hearing, the juvenile court found that DPSS had established a prima facie case that each of the children came within section 300 as alleged. It did not detain any of the children from their fathers, nor did it detain the three older children from mother. The three older children expressed that they wanted to live with mother, and the court was persuaded to allow them to do so. The court ordered S.V. detained out of mother's custody and temporarily suspended her visitation with him, granting physical

6

custody of him to his father. At the request of DPSS and over mother's objection, the court ordered "full disclosure" of the child custody evaluation report that had been prepared in the family law case.[3]

At the jurisdiction and disposition stage, DPSS reported that S.V. was generally "safe and content in the care and custody of his father." When the social worker asked S.V. to write down his thoughts regarding "good things," S.V. listed "'being with my dad, going to a new school, and being happier.'" S.V.'s father reported that the child had "opened up" and "talked about his mother forcing him to make false statements." When the social worker asked S.V. to write down things that worried him, he listed "'getting yelled at by my mom, and getting scared about what would happen (would my mom yell at me).'" When asked to explain further, S.V. stated: "'Well, my mom would make me say stuff I didn't want to say. Things that were bad. I can't explain it because it was terrifying for me.'" S.V. then became too upset to discuss the issue further.

After a contested jurisdiction/disposition hearing on December 12, 2019, the juvenile court sustained the dependency petition as alleged. The court ordered the three older children to remain in the physical custody of their parents, and that the parents receive family maintenance services. The court removed S.V. from mother, but not from his father. It ordered mother to participate in reunification services as to S.V., and it ordered family maintenance services for his father.

---

[3] The report appears in our record as an attachment to DPSS's jurisdiction/disposition report.

## II. DISCUSSION

A. *Child Custody Evaluation Report*

Mother contends Husen's child custody evaluation report should not have been disclosed to the parties in this dependency matter or considered by the juvenile court in determining whether it had jurisdiction. We are not persuaded.

The discovery rules in dependency matters, which are liberal in many respects, nevertheless do not allow DPSS to discover information that is privileged for purposes of establishing the juvenile court's jurisdiction. (*Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 202.) With exceptions not relevant here, however, a person evaluated by a psychologist by court order has no claim of privilege over the evaluation. (Evid. Code, § 1017, subd. (a); *In re Eduardo A.* (1989) 209 Cal.App.3d 1038, 1044.) As noted, Husen evaluated mother as part of the child custody evaluation ordered by the family law court pursuant to Evidence Code section 730 and in accordance with a stipulation of the parties. Moreover, for the psychotherapist-patient privilege to apply, mother would have to be Husen's patient. (*In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1168.) She was not. (*Ibid.* [party not a "'patient'" for purposes of the privilege "because she was not seeking a diagnosis or treatment of a mental or emotional condition nor was any scientific research involved"]; see Evid. Code, § 1011.) It follows that mother had no claim of

privilege over the child custody evaluation report or the psychological evaluation of her that was included in that report.

Mother's assertion that *In re M.L.* (2012) 210 Cal.App.4th 1457 (*In re M.L.*) is "extremely helpful here" is incorrect. In that case, the Court of Appeal analyzed whether the juvenile court had erred in ordering *privileged* records to be disclosed and included in the record. (*Id.* at pp. 1467-1468.) Notably, part of the juvenile court's error in that case was disclosing and admitting the privileged documents when much of the same information existed in documents that were not privileged and already in the record. (*Ibid.*) As discussed above, the child custody evaluation report at issue here is not a privileged document, nor did mother have any privilege with respect to the portion of it discussing Husen's evaluation of her. Thus, *In re M.L.* is not "helpful" for analysis of this case, as mother would have it.

Mother also emphasizes that there is authority for the proposition that a court may not order a parent to undergo a psychological examination solely on the basis of the parent's mental illness for purposes of determining jurisdiction in a dependency case. (See *Laurie S. v. Superior Court*, *supra*, 26 Cal.App.4th at pp. 202-203.) Here, however, the juvenile court did not order mother to undergo a psychological examination to determine jurisdiction. Rather, the child custody report at issue already existed before the dependency, created pursuant to an order of the *family law* court. Authority regarding the

9

juvenile court ordering a parent to undergo psychological examination to determine its jurisdiction does not apply to our facts.

Mother is also incorrect that section 5328 supports her position. That statute is the confidentiality provision for "information and records obtained in the course of providing services" to mentally ill persons under specified provisions of the Welfare and Institutions Code. (§ 5328, subd. (a); see *Mavroudis v. Superior Court* (1980) 102 Cal.App.3d 594, 601 [§ 5328 confidentiality provision "extends only to those records specifically described in the statute"].) Husen's report was not obtained by DPSS in the course of providing services to mother under any of the specified statutory provisions. Mother has offered no reasoned argument as to why section 5328 might nevertheless govern here.

Finally, mother finds it "disturbing" and "alarming" that the child custody evaluation report would be considered for jurisdictional purposes because her primary language is Spanish, but Husen's evaluation of her was conducted in English. The report states that Husen and mother discussed the circumstance that English is mother's "second language." Husen explained to mother that he would not provide an interpreter, but that she was "entirely free" to use one "at any time" if she wanted. Mother told Husen she "would not be using an interpreter," and they "agreed [to] proceed in English." Mother "agreed that she would let [Husen] know if she didn't understand anything," and he agreed to "look for signs" that mother understood, and to give her the "time and space needed to communicate . . . accurately and effectively throughout the course of the

10

evaluation." The report notes one occasion when mother expressed that she wanted an interpreter.[4] Mother testified at the jurisdiction and disposition hearing that there were "five occasions" when Husen "denied" her "having an interpreter." She also testified that there were several factual inaccuracies in the report that she attributed to Husen's failure to understand her accent.[5]

In essence, mother contends here, as she did in the trial court, that Husen's report was not "valid" and his conclusions should not have been given any weight because of the purported language barrier between mother and the expert. The juvenile court, however, determined otherwise, finding the report to be "very thorough" and apparently giving it substantial weight. It is not our role on appeal to "reweigh or express an independent judgment on the evidence." (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859-860.) Having reviewed the record, we find the juvenile court's determination was well within the bounds of reason. The juvenile court reasonably could have concluded that a few factual errors on peripheral matters did not undermine the validity of Husen's central

---

[4] On that occasion, Husen had "persisted a bit" after mother expressed that she did not want to discuss allegations, determined to be unfounded, that she had previously made against the father of her oldest child (who is now an adult and is not one of the four children involved in this matter). Mother then "said she wanted an interpreter," and expressed that she was feeling like the evaluation process was a "trick."

[5] Specifically, mother testified that she told Husen she was 48, but the report states her to be 40 years of age. Also, she told Husen that her father died of a heart attack, though he had also had leukemia, but the report states that he died of leukemia.

11

conclusions, and that the limitations in mother's English skills did not fundamentally impede her ability to communicate with Husen or interfere with his evaluation of her.

Mother has not demonstrated any appropriate basis for us to disturb the juvenile court's conclusions regarding the admissibility of Husen's report or how much weight to give it. The report, including its psychological evaluation of mother, was properly obtained, nonprivileged evidence that was appropriately admitted and considered by the juvenile court in determining whether it had jurisdiction.

B. *Pleadings*

Mother contends that the juvenile court's finding that each of the children came within section 300, subdivision (b), must be reversed because the dependency petition's subdivision (b) allegations were "incorrectly pled." This is a contention that she raises for the first time on appeal. We find that she has therefore forfeited the issue.

There is a split of authority regarding whether a challenge to the facial sufficiency of a dependency petition is forfeited on appeal by failure to object in the juvenile court. (See *In re S.O.* (2002) 103 Cal.App.4th 453, 459-460 [discussing split].) The Court of Appeal in *In re Alysha S.* (1996) 51 CalApp.4th 393, 397, held that a section 300 petition's failure to state a cause of action can be raised for the first time on appeal. In *In re Shelley J.* (1998) 68 Cal.App.4th 322, 328-329, the Court of Appeal rejected *In re Alysha S.* and found the appellant had waived her right to challenge the sufficiency of the allegations of the petition by raising the issue for the first time on appeal. Most courts to have considered the issue recently have sided with *In re Shelley J.*, and we agree that case

12

represents the "better view." (*In re S.O.*, *supra*, at p. 459.) *In re Alysha S.* improperly relied on the Code of Civil Procedure, which is generally inapplicable in dependency proceedings except as expressly incorporated by the Welfare and Institutions Code. (*In re Shelly J.*, at pp. 328-329.) Moreover, "[a]llowing parties to challenge the facial sufficiency of a petition for the first time on appeal conflicts with the emphasis on expeditious processing of these cases so that children can achieve permanence and stability without unnecessary delay if reunification efforts fail." (*In re David H.* (2008) 165 Cal.App.4th 1626, 1640.) Also, there is no prejudice from a pleading that fails to state a cause of action if, in the end, sufficient evidence supports the juvenile court's ruling. (See *In re Athena P.* (2002) 103 Cal.App.4th 617, 628 ["If the evidence at the jurisdictional hearing was insufficient, [appellant] can seek reversal on that ground. But if the evidence was sufficient to support the juvenile court's findings, any failure of the petition to state a cause of action became harmless error."].)

Additionally, although "application of the forfeiture rule is not automatic," particularly in dependency matters, our discretion to "excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) As will become apparent below, this case does not present any important legal issues, but rather turns on application of well-established principles. We decline to excuse mother's forfeiture of any challenge to the facial sufficiency of the allegations of the dependency petition.

In her reply brief, citing *In re Israel T.* (2018) 30 Cal.App.5th 47, mother reframes her argument from a challenge to the sufficiency of the pleadings to a contention that the court failed to "make the findings required by statute." (*Id.* at p. 51.)  Arguably, mother could be deemed to have forfeited appellate review of this argument, too, by failing to raise it in her opening brief.  (See, e.g., *In re Daniel M.* (2003) 110 Cal.App.4th 703, 707, fn. 4.)  Nevertheless, the reframed argument is not persuasive on its merits.  In *In re Israel T.*, the juvenile court purported to take jurisdiction pursuant to section 300, subdivision (b), but in the course of doing so made express findings rejecting the notion that the children came within the statutory language of that subdivision.  Thus, section 300, subdivision (b) provides for juvenile court jurisdiction where the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm . . ."  The juvenile court in *In re Israel T.*, however, in making a written version of its findings, interlineated the petition's recitation of the statutory language by "[striking] the word 'substantial' before the word 'risk,' and [striking] the word 'serious' before the word 'physical harm.'"  (*In re Israel T.*, *supra*, 30 Cal.App.5th at p. 50.)  It further stated on the record:  "'I don't believe these parents constitute any kind of risk to the children.'"  (*Ibid.*)  The Court of Appeal, unsurprisingly, found that the juvenile court had erred by taking jurisdiction despite its express findings that the children did not meet the statutory requirements for it to do so.  (*Id.* at p. 51)

Mother argues that the juvenile court's statements here, as it made its jurisdictional findings, indicate that it similarly "rejected the statutorily required

elements." (*In re Israel T.*, *supra*, 30 Cal. App.5th at p. 51.) We disagree. As mother notes, section 300, subdivision (b) does not provide for jurisdiction based on emotional harm alone. (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 718.) And in making its jurisdictional rulings, the juvenile court emphasized that it was persuaded that "all of the children are potentially suffering a risk of potential emotional harm."[6] We do not, however, read the juvenile court's comment as mother does, that is, as an implicit finding that the children were *not* at any risk of physical harm. On appeal, we must view the record in the light most favorable to the juvenile court's ruling. (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859-860.) Viewed in that light, the juvenile court's comment is reasonably interpreted as echoing and emphasizing part of the dependency petition's allegations, but without any implication that there was no substantial risk of physical harm to the children. Put another way: the juvenile court's comment here— regarding a matter that would not, on its own, be enough to establish jurisdiction—does not unambiguously rule out that the juvenile court *also* made the necessary findings of fact regarding risk of physical harm. (Cf. *In re Israel T.*,] at p. 52 ["the court's own comments . . . refute any inference that it found the parents posed a serious risk to their children's physical well-being"].)

---

[6] The fuller context of this statement is the following, as the court made its jurisdictional findings: "By preponderance of the evidence, the Court does find allegations (b)(1) and (c)(1) to be true. And I do want to point out that as to (b)(1), I do think that all of the children are potentially suffering a risk of potential emotional harm. The petition is sustained. [¶] The Court finds that the children come within Welfare and Institution[s] Code Section 300(b)(1), that [is] all of the children, and [S.V.] also comes within (c)."

We conclude that mother's arguments regarding the sufficiency of the allegations of the dependency petition were forfeited. Additionally, mother has not demonstrated that the juvenile court failed to make the findings required by statute to take jurisdiction.

C. *Sufficiency of the Evidence*

Mother contends that no substantial evidence supports the juvenile court's determinations that all four children fall within section 300, subdivision (b), or that S.V. also falls within section 300, subdivision (c). We are not persuaded.

At the jurisdictional hearing, the juvenile court determines whether the child falls within any of the categories described in section 300, and therefore within the court's jurisdiction. (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1082.) As relevant here, subdivision (b)(1) of section 300 applies when the child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness" as a result of the "failure or inability of his or her parent or guardian to adequately supervise or protect the child" or "the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness . . . ." Subdivision (c) of section 300 provides in relevant part for juvenile court jurisdiction when the child "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian . . . ."

16

The petitioner (here, DPSS) bears the burden of proving by a preponderance of the evidence that the child comes within the juvenile court's jurisdiction. (*In re Shelley J.*, *supra*, (1998) 68 Cal.App.4th 322, 329.) We review the juvenile court's order for substantial evidence, viewing the record in the light most favorable to the order. (*In re Amy M.*, *supra*, 232 Cal.App.3d at pp. 859-860.) Issues of fact and credibility are matters for the juvenile court alone. (*Ibid.*) We may not reweigh or express an independent judgment on the evidence, and are limited to determining whether there is any substantial evidence, contradicted or uncontradicted, that supports the judgment. (*Ibid.*) "'"We uphold judgments if they are correct for any reason, 'regardless of the correctness of the grounds upon which the court reached its conclusion.' [Citation.] 'It is judicial action and not judicial reasoning which is the subject of review.'"'" (*In re A.S.* (2011) 202 Cal.App.4th 237, 246, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

Regarding S.V., in particular, the question of whether there is substantial evidence to support the juvenile court's jurisdictional ruling is not close. Where DPSS alleges that a child comes within section 300, subdivision (c) on the basis of parental actions causing emotional harm, it bears the burden of proving: "(1) the offending parental conduct; (2) causation; and (3) serious emotional harm or the risk thereof, as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior." (*In re Alexander K* (1993) 14 Cal.App.4th 549, 557; see § 300, subd. (c).) There is no dispute that S.V. has suffered serious emotional harm; mother concedes that it is "clear" he is "seriously

17

emotionally troubled." She contends this harm was caused by abuse he suffered at the hands of his father, and points to various evidence in the record from which such a conclusion could be reached. As discussed above, however, the record also includes expert opinion evidence, Husen's report, that it was mother who was "harming [S.V.] immensely." Other evidence that it was abuse by mother that was the cause of S.V.'s serious emotional harm includes S.V.'s own statements that she had forced him to say "bad" things that were not true, as well as the social worker's observations that S.V. was apparently "safe and content" in father's care. At most, mother has identified a conflict in the evidence. That is not enough for us to disturb the juvenile court's ruling. (*In re Amy M.*, *supra*, 232 Cal.App.3d at pp. 859-860.)

Similarly, there is substantial evidence in support of the trial court's finding that S.V. fell within section 300, subdivision (b).[7] Husen opined that mother's abusive conduct was motivated not by any conscious intent to hurt S.V., but rather by mother's mental illness. The emotional harms S.V. suffered from that conduct apparently resulted in suicidal ideation, requiring multiple hospitalizations. Alternatively, mother's reports that S.V. was suicidal, resulting in his confinement to a mental facility and possible

---

[7] Having found substantial evidence in support of the juvenile court's conclusion that S.V. fell within section 300, subdivision (c), our discussion of its subdivision (b) findings is not strictly necessary. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 [when dependency petition alleges multiple grounds for jurisdiction, finding of jurisdiction will be affirmed if any one of those grounds is supported by substantial evidence].) Nevertheless, since we must in any case discuss section 300, subdivision (b) with respect to the three older children, we briefly address mother's subdivision (b) contentions regarding S.V. for the sake of completeness.

treatment with psychotropic medication, may have themselves been a product of her mental illness, rather than a true report of his behavior. Either way, there was ample evidence that S.V. was at "substantial risk" of "serious physical harm," and that the risk arose from mother's mental illness interfering with her ability to provide him "regular care" in the meaning of section 300, subdivision (b)(1).

Finally, although it is a closer question, we also reject mother's contention that there is no substantial evidence that the three older children also come within section 300, subdivision (b). No doubt, S.V. was in more acute distress than his brothers. Moreover, his brothers were older and therefore likely less vulnerable in at least some respects. Nevertheless, there was evidence that mother's mental illness had previously manifested as false allegations of abuse with respect to children other than S.V. Husen also observed that all four boys showed signs of having been "coach[ed]" regarding the allegations of abuse against S.V. It would not have been unreasonable on these facts for the juvenile court to conclude that, particularly once S.V. was removed from the home, there was a substantial risk that one or more of the three older children might become the focus of similarly abusive behaviors, with similarly dangerous potential consequences.

"'Although the evidence is by no means overwhelming, given the deference we must accord a juvenile court's factual findings [citation], we conclude there is substantial evidence to support the jurisdictional findings.'" (*In re S.O.*, *supra*, 103 Cal.App.4th at p. 462, quoting *In re Basilio T.* (1992) 4 Cal.App.4th 155, 169.) Mother has raised no separate challenges to the juvenile court's dispositional orders.

19

## III.  DISPOSITION

The challenged findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAPHAEL
J.


We concur:

McKINSTER
Acting P. J.

FIELDS
J.