COMMONWEALTH VS. ALBERTO VEGA & another.[1]

Suffolk. April 2, 2007. - May 23, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Privileged Communication. Evidence,* Privileged communication, Testimonial privilege. *Practice, Criminal,* Interlocutory appeal. *Practice, Civil,* Extraordinary review.

This court concluded that extraordinary relief pursuant to G. L. c. 211, § 3, was available where the issue was a matter of general significance to the administration of justice, and where the error claimed was not remediable by any other means. [229]

Discussion of the statutory scheme by which the Legislature has chosen to protect communications with certain mental health professionals from disclosure. [229-230]

This court concluded that G. L. c. 112, § 172, which makes confidential a communication to an "allied mental health . . . professional," also creates an evidentiary privilege for such a communication. [230-234]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 17, 2006.

The case was reported by *Greaney,* J.

*Victoria Kelleher* for the defendant.

*Christina E. Miller,* Assistant District Attorney, for the Commonwealth.

*Karen Dean-Smith* for the intervener.

COWIN, J. General Laws c. 112, § 172, makes confidential a communication to an "allied mental health . . . professional."[2] In this appeal, we consider whether the statute also creates an evidentiary privilege for such a communication, similar to the statutory privileges for communications with psychotherapists,

---

[1]Karen Dean-Smith, guardian ad litem, intervener.

[2]General Laws c. 112, § 172, provides that "[a]ny communication between an allied mental health or human services professional and a client shall be deemed to be confidential. Said privilege shall be subject to waiver only in the following circumstances," and lists four exceptions set forth *infra.*

social workers, and sexual assault and domestic violence counsellors. Based on the statutory language, we conclude that the Legislature did intend to create such a privilege.

*Facts.* The facts relevant to the present appeal are not in dispute. The defendant, Alberto Vega, was indicted on two counts each of incest, rape of a child with force, and indecent assault and battery on a child under fourteen, and on one count of assault with intent to rape a child. The charges were based on allegations that the defendant sexually assaulted his two younger sisters repeatedly for several years, while they were between nine and fourteen years of age. After reporting the sexual assaults, both complainants received counselling and medical services from numerous providers. At issue in this appeal are communications between the second complainant (the younger of the two sisters) and a licensed mental health counsellor from whom she received counselling. The Superior Court judge found, and the parties do not dispute, that the counsellor is an allied mental health professional (AMHP) as defined in G. L. c. 112, § 163.[3]

*Procedural history.* Pursuant to the procedure outlined in *Commonwealth* v. *Bishop*, 416 Mass. 169 (1993), and *Commonwealth* v. *Fuller*, 423 Mass. 216 (1996), the defendant moved to obtain access to the complainants' mental health treatment records, including records of the second complainant's communications with the AMHP.[4] The court appointed a guardian ad litem (GAL) for the complainants. The GAL asserted a privilege on the complainants' behalf with respect to all counselling records.[5] After a hearing, the Superior Court judge con-

---

[3] The statute defines an AMHP as "a licensed marriage and family therapist, a licensed rehabilitation counselor, a licensed educational psychologist *or a licensed mental health counselor*" (emphasis added). G. L. c. 112, § 163.

[4] The outcome of this case is not affected by our recent revision of the *Bishop-Fuller* protocol in *Commonwealth* v. *Dwyer*, 448 Mass. 122 (2006). The *Dwyer* decision changed only the procedure for seeking access to privileged records, not the substantive law of evidentiary privilege. That revised protocol will govern subsequent proceedings in this case on remand. See *id.* at 124 (*Dwyer* protocol applies "to all criminal cases tried after the issuance of the rescript in this case").

[5] The GAL did not assert a privilege as to the records of one complainant's visit to a school nurse.

cluded that all of these records were privileged under various statutes, except for the records of communications with the AMHP. The judge reasoned that because G. L. c. 112, § 172, the statutory provision rendering communications with AMHPs confidential differed from other, similar provisions in its form, wording, and placement in the General Laws, it did not indicate a legislative intent to create a privilege.

The Commonwealth filed a petition in the county court seeking relief from the trial court judge's order. After allowing the GAL's motion to join or intervene, a single justice of this court reserved and reported the case to the full court.

*Discussion.* a. *Relief under G. L. c. 211, § 3.*[6] A party seeking extraordinary relief pursuant to G. L. c. 211, § 3, must demonstrate both a substantial claim of violation of substantive rights and error that cannot be remedied by ordinary appellate review. *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986). Here, the issue of the existence of a privilege for AMHP communications is "a matter of general significance to the administration of justice." *Commonwealth* v. *Babb*, 389 Mass. 275, 283 (1983). Furthermore, the error claimed by the Commonwealth is not remediable by any other means. See *Commonwealth* v. *Bing Sial Liang*, 434 Mass. 131, 133 (2001). Thus, we proceed to the merits.

b. *Relevant law.* We sketch the statutory scheme by which the Legislature has chosen to protect communications with certain mental health professionals from disclosure. The Legislature has created confidentiality rules and evidentiary privileges applicable to various mental health providers.[7] Communications to licensed psychologists are rendered confidential pursuant to G. L. c. 112, § 129A, and are privileged from testimonial

---

[6]Although the defendant argued before the single justice that relief under G. L. c. 211, § 3, was not available to the Commonwealth in this case, he does not raise this argument before the full court.

[7]Confidentiality rules impose a duty of nondisclosure "in all circumstances," *Commonwealth* v. *Brandwein*, 435 Mass. 623, 628 n.7 (2002), while evidentiary privileges are specifically applicable to legal proceedings, see *id.* at 628-629. See also 1 D.M. Greenwald, E.F. Malone & R.R. Stauffer, Testimonial Privileges § 7.32 (3d ed. 2005) ("Confidentiality laws regulate both testimonial and nontestimonial disclosures . . .").

disclosure by G. L. c. 233, § 20B.[8] Similarly, communications between social workers and their clients are made confidential by G. L. c. 112, § 135A, and privileged by G. L. c. 112, § 135B. Communications with sexual assault counsellors are deemed confidential pursuant to G. L. c. 233, § 20J, as are communications with domestic violence counsellors under G. L. c. 233, § 20K. Although neither of these latter two provisions contains the word "privilege," they nonetheless have been held to create an evidentiary privilege. See *Commonwealth* v. *Tripolone*, 425 Mass. 487, 488-489 (1997); *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 265 (1986). The question before us is whether the Legislature intended AMHPs, unlike all these other mental health providers, to be subject to a duty of confidentiality and yet not have their communications protected by an evidentiary privilege.

c. *The statute at issue.* Statutory interpretation is a question of law. *Boston Police Patrolmen's Ass'n, Inc.* v. *Boston*, 435 Mass. 718, 719 (2002). As with any question of statutory interpretation, our starting point is the statutory text. *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 415 (1984). General Laws c. 112, § 172, provides, in relevant part:

> "Any communication between an allied mental health or human services professional and a client shall be deemed to be confidential. *Said privilege* shall be subject to waiver only in the following circumstances:

> "(*a*) where the allied mental health and human services professional is a party defendant to a civil, criminal or disciplinary action arising from such practice in which case the waiver shall be limited to that action;

> "(*b*) where the client is a defendant in a criminal proceeding and the use of the privilege would violate the defendant's right to compulsory process and right to present testimony and witnesses in his own behalf;

---

[8]Because the statutory definition of "psychotherapist" includes providers other than licensed psychologists, see G. L. c. 233, § 20B, the psychologist confidentiality rule and the psychotherapist privilege are not strictly coextensive. The discrepancy is not material to this appeal.

"(*c*) when the communication reveals the contemplation or commission of a crime or a harmful act; and

"(*d*) where a client agrees to the waiver, or in circumstances where more than one person in a family is receiving therapy, where each such family member agrees to the waiver." (Emphasis added.)

The plain text of the statute reflects a legislative intent to create an evidentiary privilege as well as a confidentiality rule. Most obviously, the statute specifically uses the term "privilege," referring to the confidentiality of communications with an AMHP as "[s]aid privilege." Any reading of the statute that ignored the word "privilege" would violate the canon that a statute "be construed 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous.' " *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004), quoting *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998). Furthermore, two of the four enumerated instances of "waiver" in the statute relate specifically to legal proceedings, see G. L. c. 112, § 172 (*a*), (*b*), indicating that the protections of the provision apply when disclosure is sought to be compelled through legal process. This is the very definition of a privilege.

The language of G. L. c. 112, § 172, is even stronger than similar language that we construed as creating an evidentiary privilege in *Commonwealth* v. *Collett*, 387 Mass. 424 (1982). That case involved a former version of G. L. c. 112, § 135, as amended through St. 1981, c. 91, § 1, which related to communications with social workers and provided, in part: "No social worker . . . may disclose any information he may have acquired from persons consulting him in his professional capacity except [under enumerated circumstances]." Although this statute did not refer directly to an evidentiary privilege or even use the word "privilege," we held that its language created one. See *Commonwealth* v. *Collett, supra* at 427. The Legislature is presumed to be aware of the prior state of the law as explicated by the decisions of this court. *Commonwealth* v. *Callahan*, 440 Mass. 436, 440-441 (2003). Thus, we presume that when G. L. c. 112, § 172, was enacted, several years after the *Collett* decision, see St. 1987, c. 521, § 2, the Legislature was aware that

similar language in a cognate statute had been interpreted as creating a privilege.[9]

It is true, as the Superior Court judge noted, that for some mental health providers, the Legislature has chosen to enact separate confidentiality and privilege provisions. See G. L. c. 112, §§ 135A, 135B (social workers); G. L. c. 112, § 129A, and G. L. c. 233, § 20B (psychologists and psychotherapists). Yet for other providers, a confidentiality rule and a privilege are created in the very same provision. See G. L. c. 233, §§ 20J (sexual assault counsellors), 20K (domestic violence counsellors). Nor do we dwell on the fact that the AMHP provision is found in the professional requirements chapter of the General Laws, rather than the evidentiary section, given that the social worker privilege, G. L. c. 112, § 135B, is found in that same chapter.

In short, the fact that the Legislature did not make the AMHP provision identical to some other statutory privileges does not make it any less of a privilege, in view of the Legislature's manifest intent to create one. The Legislature has created evidentiary privileges for different mental health providers using varying wording, form, and placement. Compare G. L. c. 112, § 135B[10] (provision in professional requirements chapter of General Laws explicitly using term "privilege"), with G. L. c. 233, § 20J[11] (provision in evidentiary chapter not using word "privilege"). The Legislature need not, at its peril, use the exact

---

[9]It is of little relevance that the Legislature chose, some time later, to outline a social worker evidentiary privilege in a separate provision, G. L. c. 112, § 135B, despite the fact that G. L. c. 112, § 135, was already recognized as creating such a privilege in *Collett*. See St. 1989, c. 535, § 1. The Legislature often adopts subsequent enactments simply to clarify the law. See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 103 (1983).

[10]General Laws c. 112, § 135B, provides in relevant part: "Except as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a client shall have the privilege of refusing to disclose and of preventing a witness from disclosing, any communication, wherever made, between said client and a social worker . . . relative to the diagnosis or treatment of the client's mental or emotional condition."

[11]General Laws c. 233, § 20J, provides in relevant part:

"A sexual assault counsellor shall not disclose such confidential communication, without the prior written consent of the victim . . . .

same formula for each statutory provision in order to achieve a particular result. Rather, where the Legislature's intent in enacting a statute is clear, "the statute, if reasonably possible, must be construed to carry out that intent." *Commissioner of Corps. & Taxation* v. *Assessors of Boston*, 324 Mass. 32, 36 (1949). Furthermore, a court does not interpret a statute so as to produce an illogical result. See *ROPT Ltd. Partnership* v. *Katin*, 431 Mass. 601, 603 (2000). There is no indication that the Legislature intended to make communications with AMHPs subject to court-ordered disclosure when communications with other mental health professionals, who may well be providing similar services to the same clients, are protected from such disclosure.[12]

The statute at issue here bears no resemblance to statutory provisions that we have found to confer confidentiality without a corresponding privilege. For instance, in *Commonwealth* v. *Senior*, 433 Mass. 453, 457 n.5 (2001), we noted that G. L. c. 111, § 70, governing hospital records, expresses a "policy favoring the confidentiality of medical records," but does not create a general physician-patient privilege. However, in that provision, unlike the statute at issue here, not only is the word "privilege" nowhere to be found, the statute expressly negates the existence of a privilege by stating that confidential hospital records may, "upon proper judicial order, whether in connection with pending judicial proceedings or otherwise . . . be inspected." *Id.* We recognize that privileges are to be construed narrowly. See *Commonwealth* v. *Oliveira*, 438 Mass. 325, 330

---

Such confidential communications shall not be subject to discovery and shall be inadmissible in any criminal or civil proceeding without the prior written consent of the victim to whom the report, record, working paper or memorandum relates."

[12]In this case, for instance, the complainants received services from numerous mental health professionals, and might not even have been aware of the different occupational titles of different providers, let alone the possibility of a significant distinction in the legal protection of communications made to them. Yet "if the purpose of the privilege is to be served, the participants in the confidential conversation 'must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege . . . is little better than no privilege at all.' " *Jaffee* v. *Redmond*, 518 U.S. 1, 18 (1996), quoting *Upjohn Co.* v. *United States*, 449 U.S. 383, 393 (1981).

(2002). Here, however, as discussed *supra*, the Legislature's intention to create a privilege in G. L. c. 112, § 172, appears plain from the statutory text. The fact that the Legislature knew how to provide expressly for confidentiality without privilege, but did not do so, only reinforces this conclusion.

The GAL, as intervener, urges a broader ground in support of our decision today: that the mental health records at issue are constitutionally protected, irrespective of any statutory privilege. However, we generally decline to reach constitutional questions where, as here, there is a readily available statutory ground that renders such a decision unnecessary. See *Commonwealth* v. *Bartlett*, 374 Mass. 744, 749 (1978).

*Conclusion.* We conclude that G. L. c. 112, § 172, creates an evidentiary privilege encompassing communications with AMHPs. The case is remanded to the county court for entry of an appropriate order.

*So ordered.*