NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-753

CITY OF SOMERVILLE

vs.

STATE BUILDING CODE APPEALS BOARD.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, the city of Somerville (city), appeals from a judgment of the Superior Court affirming the decision of the State building code appeals board (BCAB) under G. L. c. 30A, § 14. The BCAB determined that a certificate of occupancy ("CO"), and thus a temporary certificate of occupancy ("TCO"), were not required for structural renovations to a building under the eighth edition of the Massachusetts building code, 780 Code Mass. Regs. §§ 101.1 (2010) ("title 780" or "building code"). Because we conclude that, in these circumstances, a TCO was required, we reverse.

---

[1] LaCourt Foundation, LLC, and Mouhab Rizkallah were also named as defendants in the underlying action but did not participate in this appeal.

Background.  We summarize the facts in the administrative record, which appear to be largely undisputed.  The city's inspectional services department (ISD) issued a building permit allowing extensive structural renovations to an existing, six-unit residential building (the project).  After renovation, the building was still to contain six residential units, with the total number of bedrooms in the building unchanged.  City zoning requirements necessitated a special permit for the project, and one was issued by the city's zoning board of appeals.  When the project was nearing completion, the building's property owner applied to the city for a TCO.  Before any TCO had issued, tenants began occupying the building.  The city subsequently began fining the property owner $6,000 per day pursuant to G. L. c. 143, § 94 (a), because no TCO had issued, and certain zoning inspections remained outstanding.

The property owner appealed to the BCAB, seeking an interpretation of the building code's CO provisions and a review of the city's failure to act on his request for a TCO.  The BCAB held a hearing and determined that 780 Code Mass. Regs. § 111.1.1 (section 111.1.1), and not 780 Code Mass. Regs. c. 34, § 110.1 (section 110.1), applied to the project.[2]  Section 111.1.1 states, in relevant part, that:

---

[2] In considering the appeal, we are guided by a collection of interrelated regulations and statutes.  Title 780 is

2

"A building or structure, in whole or in part, altered to change from one use group to another, to a different use within the same use group, the maximum live load capacity, or the occupancy load capacity shall not be occupied or used until the certificate shall have been issued."

780 Code Mass. Regs. § 111.1.1.  Section 110.1 provides that "[n]o altered area of a building and no relocated building shall be used or occupied, and no change in the existing occupancy classification of a building or portion thereof shall be made until the code official has issued a certificate of occupancy." 780 Code Mass. Regs. c. 34, § 110.1.

Finding that none of the triggering requirements of § 111.1.1 were met, the BCAB ruled that neither a CO nor a TCO, was required.  After moving unsuccessfully for reconsideration, the city sought review of the BCAB's decision in Superior Court pursuant to G. L. c. 30A, § 14.  The parties each moved for judgment on the pleadings.  The judge concluded that § 111.1.1 and § 110.1 were in conflict and that the BCAB's determination that § 111.1.1 controlled was not erroneous; she did not address "whether the [BCAB's] interpretation of [§ 110.1] was correct."

administered by the State Board of Building Regulations and Standards (BBRS).  See G. L. c. 143, §§ 1, 93.  The BBRS adopted and incorporated by reference the International Building Code (IBC), 2009 edition, along with any Massachusetts amendments, as the base volume of title 780.  For existing buildings, the BBRS also adopted and incorporated by reference the International Existing Building Code, 2009 edition, as chapter 34 of title 780.

The city moved unsuccessfully for reconsideration, then appealed.

Discussion. "We may disturb [the BCAB's] decision if we conclude it is . . . 'not in accordance with law.'" Zoning Bd. of Appeals of Milton v. HD/MW Randolph Ave., LLC, 490 Mass. 257, 262 (2022), quoting G. L. c. 30A, § 14. "Our review of questions of law is de novo." Massachusetts Fine Wines & Spirits, LLC v. Alcoholic Beverages Control Comm'n, 482 Mass. 683, 687 (2019).

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." Hanlon v. Rollins, 286 Mass. 444, 447 (1934). "[W]e apply the familiar rule that we construe related statutes 'together so as to constitute a harmonious whole consistent with the legislative purpose,'" Wing v. Commissioner of Probation, 473 Mass. 368, 373 (2015), quoting Federal Nat'l Mtge. Ass'n v. Hendricks, 463 Mass. 635, 641 (2012), and "[we] assume that the Legislature was aware of existing statutes when enacting subsequent ones." Green v. Wyman-Gordon Co., 422 Mass. 551, 554 (1996), citing LaBranche v. A.J. Lane & Co., 404 Mass. 725, 728 (1989). "Where

4

. . . a statute contains seemingly conflicting language, a court must 'interpret . . . [it], if possible, so as to make it an effectual piece of legislation in harmony with common sense and sound reason'" (citation omitted).  Wolfe v. Gormally, 440 Mass. 699, 704 (2004).

"We interpret a regulation in the same manner as a statute, and according to traditional rules of construction."  Warcewicz v. Department of Envtl. Protection, 410 Mass. 548, 550 (1991).  "Thus, '[a]s with any question of statutory interpretation, our starting point is the . . . text.'"  DeCosmo v. Blue Tarp Redev., LLC, 487 Mass. 690, 695 (2021), quoting Commonwealth v. Vega, 449 Mass. 227, 230 (2007).  "If the language is clear and unambiguous, it must be interpreted as written."  Id., quoting Boss v. Leverett, 484 Mass. 553, 557 (2020).  "We ordinarily accord an agency's interpretation of its own regulation considerable deference. . . .  [h]owever, this principle is deference, not abdication, and courts will not hesitate to overrule agency interpretations when those interpretations are . . . inconsistent with the plain terms of the regulation itself."  Warcewicz, 410 Mass. at 550.

Both § 111.1.1 and § 110.1 identify situations in which a CO (and TCO) are required.  The provisions must be read, if possible, so as not to conflict and so that "no part will be inoperative or superfluous."  Wolfe, 440 Mass. at 704, quoting

5

Bankers Life & Cas. Co. v. Commissioner of Ins., 427 Mass. 136, 140 (1998).  As the motion judge correctly concluded, the plain language of § 111.1.1 provides four "separate, disjunctive conditions under which a [CO] for an 'altered' building must issue:  [1] a 'change from one use group to another, [2] [a change] to a different use within the same use group, [3] [a change to] the maximum live load capacity, or [4] [a change to] the occupancy load capacity.'"  See 780 Code Mass. Regs. § 111.1.1.

As to § 110.1, a plain language reading indicates that there are three occasions when a CO is required:  (1) before use or occupancy of an "altered area of a building," (2) before use or occupancy of a "relocated building," and (3) before a "change in the existing occupancy classification of a building or portion thereof."  See 780 Code Mass. Regs. c. 34, § 110.1.  See also Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 802 (2003) (court uses standard rules of grammar when interpreting statutory language).  Although both § 111.1.1 and § 110.1 address permitting for altered buildings and identify when a CO is needed, in the present circumstances we do not read them to conflict.  See Commonwealth v. Hudson, 404 Mass. 282, 286 (1989) ("The fact that two [regulations] overlap in the sense that they both prohibit the same act does not, without more, make them

conflicting" [quotation and citation omitted]).  Rather, they "are complementary and not inconsistent."  Id.

Having concluded that the provisions do not conflict, we consider whether the project fell into the ambit of § 110.1.  Despite the use of the conjunctive "and" between the two clauses of § 110.1, interpreting it as limiting the CO mandate to situations involving either an alteration or relocation of a building and a "change in the existing occupancy classification" undermines the building code's public safety purpose and is not the most logical reading of the provision.[3]  See 780 Code Mass. Regs. § 101.3.  See also Boston Retirement Bd. v. Contributory Retirement Appeal Bd., 441 Mass. 78, 83 (2004), citing Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986) ("We interpret a statute to give effect to the Legislature's purpose").  We thus conclude that § 110.1 applies where a building has been altered or relocated, even where is no corresponding change in use or occupancy.

---

[3] Our interpretation of § 110.1 is supported by the contemporaneous commentary to the IEBC, which expressly states that "[t]his section establishes that a building or structure that has been repaired, altered, relocated or has experienced a change of occupancy cannot be occupied until a certificate of occupancy is issued by the code official."  See Sacks v. Dissinger, 488 Mass. 780, 785 (2021) (though not binding, explanatory comment "sheds valuable light on the statute at issue here").

We next consider whether the project involves "an altered area or building" within the meaning of § 110.1.  Title 780 defines "alteration" as "any construction or renovation to an existing structure other than a repair or addition" (emphasis omitted).  780 Code Mass. Regs. § 202.  Given the extensive renovations involved, as described in the BCAB's decision, it is evident that the project included an "altered area" under § 110.1.  Accordingly, a TCO was required prior to occupancy.  780 Code. Mass. Regs. c. 34, § 110.1.  We therefore reverse the judgment and remand for the entry of judgment in favor of the city.

So ordered.

By the Court (Green, C.J.,
Shin & Hershfang, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  July 13, 2023.

---

[4] The panelists are listed in order of seniority.